FRANK ADAMS *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield March 26, 1884.*

1. CONTINUANCE—*absence of witnesses—materiality of the proposed testimony.* Preliminary to the trial of two defendants on a charge of murder, alleged to have been committed on the night of the 10th of July, by compelling the deceased to jump from a railroad car while in rapid motion, the court refused a continuance on behalf of the accused, asked on the ground of the absence of two witnesses residing in Indiana, by whom the defendants expected to prove that such witnesses saw the defendants at the town of Godfrey, in Madison county, Illinois, on the evening of July 9, a place distant some twenty-five or thirty miles from where the offence was charged to have been committed: *Held,* no error, as the affidavit failed to show any

incompatibility between the fact alleged, as expected to be proved, and the commission of the offence by the defendants. The absent testimony was immaterial.

2.  CRIMINAL LAW—*what constitutes murder—of the intent.* Intent to kill does not enter into the definition of murder. It is enough if the unlawful killing be done with malice aforethought, either express or implied.

3.  If a party of men board a railway car, and while the train *is* running draw deadly weapons on a passenger, and make him hold up his hands while they rob his person, and then by threats and intimidation cause him to jump from the car door, they commanding him to do so, and he is thereby killed, they will be guilty of murder. In such case it is not essential that death should be the probable and reasonable result of the act the deceased *is* forced to do. It is sufficient that death or great bodily harm was the natural result. Forcing a person to do an act which causes his death, renders the death the guilty deed of him who compelled the deceased to do the act.

4.  Malice may be inferred when an act unlawful in itself is done deliberately, and with intention of mischief or great bodily harm to those on whom it may chance to light, if death is occasioned by it. By the statute, if an involuntary killing shall happen in the commission of an unlawful act which in its consequences naturally tends to destroy the life of a human being, or the act is committed in the execution of a felonious *intent,* the offence is declared murder.

5.  SAME—*of the evidence against one charged with murder.* On the trial of two persons on a charge of murder committed on July 10, 1883, by compelling a passenger to jump from a railway train while it was in motion, two witnesses for the People were allowed to testify, over an objection, that they saw the defendants, and two others, with whom the defendants were indicted for the murder, together on the railroad track on July 8, 1883, and that one of them had a revolver: *Held,* that there was no legal objection to this testimony.

6.  In the same case, the State's attorney, in the examination of one of these witnesses, produced a watch chain, and the witness said it was his chain, and that he had it on when he met the defendants and the two others who were indicted, on the evening of July 8, 1883,—which was objected to: *Held,* that while the evidence as to the watch chain might properly enough have been excluded as irrelevant, yet it was not sufficiently harmful to the defendants to make its admission material error. It would not justify an inference that the witness had been robbed by the four men.

7.  So, too, one of these witnesses, in answer to the inquiry whether there was anything unusual to cause him to remember the time of seeing one of the defendants on the morning of July 8, 1883, said a man was found dead that morning,—a stock man, who had fallen from a train: *Held,* that the concluding part of this evidence repelled any inference that this man, too, had been thrown from the train by the same men, and its admission was not error.

8. Same—*of a reasonable doubt.* On the trial of one for murder, an instruction for the defence that the law in regard to reasonable doubt applies with greater force to circumstantial than to other classes of evidence, is erroneous, and properly refused.

9. It is error in an instruction for the defence to say, that if the circumstances are capable of being explained on a theory consistent with the innocence of the accused, the jury should acquit. A theory might be assumed that the testimony as to his guilt was false, and on such a theory there could be an explanation of the circumstances consistent with his innocence.

10. Same—*and herein, of the policy that many guilty men should escape rather than one innocent person should suffer.* On the trial of two persons upon a charge of murder, the defendants asked the court to instruct the jury that the policy of the law is, that it is better that ninety and nine, or any number of guilty persons, should escape, than that one innocent man should be convicted, and that it is not sufficient to authorize a conviction that the greater weight or preponderance of evidence supports the allegations of the indictment,—which the court refused to give: *Held,* that the instruction was properly refused, there being no policy of the law on the subject, or for the consideration of the jury; that it is not within the purpose of the law that any guilty person should escape or any innocent one be convicted; and that if the greater weight or preponderance of the evidence be such as to satisfy the jury, beyond a reasonable doubt, of the defendants' guilt, then it would be sufficient to authorize a conviction.

WRIT OF ERROR to the Circuit Court of Greene county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Messrs. DOOLITTLE & ENGLISH, for the plaintiffs in error.

Mr. JAMES McCARTNEY, Attorney General, for the People.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

Frank Adams and Benjamin F. Pritchard, at the September term, A. D. 1883, of the Greene county circuit court, were indicted for the crime of murder, and found guilty, and sentenced to imprisonment in the penitentiary for the terms of twenty and fourteen years, respectively. They bring this writ of error to reverse the judgment.

The refusal of a continuance is assigned for error. The defendants were indicted on the 6th of September, 1883, and

on the 17th of September, 1883, made their motion and affidavit for a continuance, on the ground of the absence of two witnesses, who resided in Indianapolis, in the State of Indiana, by whom they expected to prove that said witnesses saw the defendants at the town of Godfrey, in the county of Madison, in this State, on the evening of the 9th of July, 1883, the day before the night on which the offence charged in the indictment was alleged to have been committed; that said place was a distance of twenty-five or thirty miles from the place where the offence was said to have been committed, and in a different direction from which the train upon which the offence alleged to have been committed, came. The crime was charged in the indictment to have been committed on the 10th day of July, 1883, by forcing the deceased, one Patrick Knight, to jump from a freight car on a certain railroad while the car was in motion. The affidavit, so far as we can see, does not show any incompatibility between the fact alleged as expected to be proved by the witnesses, and the commission by the defendants of the crime charged, and we think the motion for a continuance was properly overruled on the ground of the materiality of the absent testimony not sufficiently appearing.

Objection is taken to the admission of the testimony of the witnesses Curtis and Thompson. The testimony of these witnesses was upon the point of having seen the defendants, and Hogan and Ryan, with whom they were indicted, together on the railroad track on the 8th of July, and that one of them had a revolver. There could be no objection to this; but in the examination of Curtis, the State's attorney produced a watch chain, and the witness said it was his chain,—that he had it on when he met these men, on the evening of the 8th of July. This evidence as to the watch chain might properly enough have been excluded as irrelevant, but we do not see that it was sufficiently harmful to the defendants to make its admission material error. It is said the implication would

be that the witness was robbed by these four men. We think that would be a strained inference from the evidence, and one not justified.

Thompson, in answer to the inquiry whether there was anything unusual to cause him to remember the time of seeing Ryan on Sunday morning, July 8, said a man was found dead that morning,—a stock man had fallen from the train. It is said that was calculated to produce the impression that this man, too, had been thrown from the train by these men; but the concluding portion of the statement, that a stock man had fallen from the train, repels such an idea.

It is contended that the evidence does not support the verdict. The witness, Patrick Coughlin, testified that he left Chicago with Patrick Knight, going to St. Louis; that on the way they, at Greenfield, on the line of the Chicago, Burlington and Quincy railroad, got into a box car on a freight train on that railroad, in which were Adams, one of the defendants, and Ryan, and as the train started, Pritchard, the other defendant, and Hogan, jumped into the car, and the doors were shut; that some time afterwards, while the train was running, the four other men "covered" witness and Knight with four revolvers, two of them also having razors in their left hands; that they ordered witness and Knight to hold up their hands, and searched them; that they got nothing from witness, for he had nothing, but they took about three dollars from Knight. After that they opened the door of the car and told witness and Knight to jump; that witness jumped first, and some one kicked him; that witness was not hurt; that he walked along a little way and came to the body of Knight; he was dead; the body was lying at right angles with the track, the feet out, and the head between the ties, about an inch and a half or two inches from the rail; the back part of his head had been crushed in. The testimony of this witness, if believed, would sustain the verdict. It is insisted that the testimony is not entitled to credit. The jury

appear to have given credence to it, and after a careful consideration of it, with the other evidence in the case, and the circumstances which are adverted to as detracting from the credibility of the witness, we find no sufficient reason for disturbing the conclusion of the jury.

Objection is taken to the giving and refusing of instructions. This instruction was given upon the part of the People:

"The court further instructs the jury, for the People, that to prove the charge in the indictment there need be no laying of hands on the person of Patrick Knight, by the defendants, to put him from the car, in order to constitute the force therein alleged; but that if defendants did, by threats of violence to the person, intimidation, or by displaying deadly weapons in a threatening manner, cause the said Patrick Knight to leap or jump from the car while in motion, as alleged in the indictment, under circumstances which would have caused a prudent man to do so, and thereby he was killed, as charged in the indictment, and if the jury so believe, from the evidence, beyond a reasonable doubt, that such are the facts, they should find the defendants guilty."

The exception taken to this instruction is, that it is defective in not having the qualification that the defendants forced the deceased to jump from the car with intent to kill him, or that the killing was the probable and reasonable result of such jump. Intent to kill does not enter into the definition of murder. It is enough if the unlawful killing be with malice aforethought, either express or implied. Nor was it essential that death should have been the probable and reasonable result of the act which the defendants forced the deceased to do. It is sufficient that death or great bodily harm was the natural result. Forcing a person to do an act which causes his death, renders the death the guilty deed of him who compelled the deceased to do the act. (3 Greenleaf on Evidence, sec. 142.) Malice may be proved by evidence of gross

29—109 ILL.

recklessness of human life, where, in any manner, the life of another is knowingly, cruelly and grossly endangered, whether by actual violence, or by inhuman privation or exposure, and death is caused thereby. (Ibid. sec. 147.) Malice may be inferred where an act unlawful in itself is done deliberately, and with intention of mischief or great bodily harm to those on whom it may chance to light, and death is occasioned by it. (2 Starkie on Evidence, 951.) The definition of murder, by our statute, is: "The unlawful killing of a human being, in the peace of the people, with malice aforethought, either express or implied. * * * Malice shall be implied where all the circumstances of the killing show an abandoned and malignant heart." And in the statutory definition of involuntary manslaughter there is this provision: "*Provided, always,* that where such involuntary killing shall happen in the commission of an unlawful act, which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offence shall be deemed and adjudged to be murder." The instruction presents fully a case of murder as thus defined by the statute.

It is the same objection, substantially, which is made to the other instructions on behalf of the People, except the seventh, which informs the jury, "that if the defendants * * * conspired to rob Patrick Knight, * * * and with the *intent to conceal* said crime of robbery did force him to jump," etc., they should find the defendants guilty. The further exception is taken to this instruction that there is nothing in the evidence upon which to base it. There was evidence of a robbery of Knight, and that immediately upon its commission he was forced to jump from the car. We do not think it can well be said there is nothing in the evidence upon which to base the instruction.

We perceive no error in the refusal of instructions asked by the defendants. The first was erroneous in saying to the

jury that the law in regard to reasonable doubt applies with greater force to circumstantial than to other classes of testimony. We are aware of no such rule of law. There was further error in saying that if the circumstances were capable of being explained on a theory consistent with the innocence of the defendants, the jury should acquit. A theory might be assumed that the testimony as to the defendants' guilt was false, and on such a theory there could be an explanation of the circumstances consistent with the innocence of the defendants.

The second refused instruction asserted that the policy of the law is, that it is better that ninety and nine, or any number of guilty persons, should escape, than that one innocent man should be convicted, and that it is not sufficient to authorize a conviction that the greater weight or preponderance of evidence supports the allegations of the indictment. There is no policy of the law upon the subject, or for the consideration of the jury. It is not within the purpose of the law that any guilty person should escape, or any innocent one be convicted. The question for the determination of the jury is that of the guilt or innocence of the accused, and it is not for them to inquire what is politic to do. If the greater weight or preponderance of the evidence be such as to satisfy the jury, beyond a reasonable doubt, of the defendants' guilt, then it would be sufficient to authorize a conviction.

The third refused instruction laid it down as the duty of a juror not to yield to the mere importunities or persuasions of other jurors, but only to yield to his own sound and mature judgment, based solely upon a fair and candid consideration of the evidence. This instruction was properly refused, as holding out encouragement to the jurors to adhere obstinately to their individual opinions, and not to be influenced by the views of, or deliberation with, their fellow jurors.

Finding no material error in the record, the judgment must be affirmed.

*Judgment affirmed.*