# WILKINS SEACORD

## V.

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Nuisances—Indictment for Maintaining Tank for Rendering Dead Animals —Unlawful Intention—Criminal Negligence — Presumption — Evidence—Instructions.*

1.   Whatever is offensive, physically, to the senses, and by such offensiveness makes life uncomfortable, is a nuisance; and any business, however lawful, which causes annoyances that materially interfere with the ordinary comfort, physically, of human existence, is a nuisance.

2.   One can not claim immunity for a nuisance on the ground that he created it to abate another.

3.   The law presumes that every person intends the natural consequences of his own acts; and where the acts of the defendant amount to criminal negligence, such negligence supplies the place of unlawful intention.

4.   Upon an indictment for maintaining a nuisance, it is *held:* That a motion to quash was properly overruled, the language in respect to the character of the nuisance being substantially that used in the s'atute; that the indictment is sufficiently explicit as to the locality of the nuisance; that

the evidence sustains the verdict; and that there is no error in the rulings of the court below upon the admissibility of evidence, or in giving and refusing instructions.

[Opinion filed January 15, 1887.]

APPEAL from the Circuit Court of Warren County; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. WILLIAM C. NORCROSS, GEORGE W. THOMPSON and WILLIAMS, LAWRENCE & BANCROFT, for appellant.

Messrs. JOHN W. MATTHEWS and FREDERICK A. WILLOUGHBY, for appellee.

BAKER, P. J.   The indictment for maintaining a nuisance upon which Wilkins Seacord was convicted, charged that he on the first day of July, 1885, "at and within the County of Warren and State of Illinois, and continually from said day to the time of the finding of this indictment, unlawfully and wilfully did cause and suffer the carcasses of divers dead animals, and large quantities of offal, filth and noisome substances, then and during all the time aforesaid and there to be collected, deposited and remain near the dwelling houses of N. F. Conrad, Thomas Kernan, Peter Johnson, Charles Fauble and others, there situated and being then and during all the time aforesaid, and there to the prejudice of the said N. F. Conrad, Thomas Kernan, Peter Johnson, Charles Fauble and others, and to the common nuisance of all the people there lawfully being and abiding."

The motion to quash the indictment was properly overruled.   The language of the charge in respect to the character of the nuisance is substantially that used in the first specification in Sec. 221 of the Criminal Code, and that is all that is required.   Fuller v. The People, 92 Ill. 182; Cole v. People, 84 Ill. 216; Warriner v. People, 74 Ill. 346; McCutcheon v. People, 69 Ill. 601.  ,The indictment is also sufficiently explicit with reference to the locality where the nuisance was maintained; it identifies that locality as being in the County of

Seacord v. People of the State of Illinois.

Warren and near the dwelling houses of N. F. Conrad, Thomas Kernan, Peter Johnson and Charles Fauble. The indictment gave ample notice of the nature of the offense charged, and the judgment on the trial could readily be pleaded in bar in another prosecution.

The evidence sustains the verdict and judgment. It appears that Seacord was the proprietor of an establishment or tank located in a timber pasture, and distant about eighty rods from the main road leading to Galesburg, and from fifty to sixty rods from the county line road, and that he used this tank for the purpose of rendering dead hogs and other dead animals, and making therefrom cheap grease. The establishment was in quite a thickly settled farming neighborhood. Seacord was also superintendent of the railroad stock yards at Galesburg, where large numbers of live hogs and cattle, *in transitu* on the railway, were unloaded for the purpose of being fed and rested, and where it became necessary to remove from the cars very many fat hogs and other stock that had died in course of transportation; the duty of disposing of these dead animals devolved on him as superintendent, and he got rid of them by hauling them off to his rendering tank in Warren County and manufacturing them into grease. In the spring and summer of 1885, the hog cholera was prevalent in that locality, and great numbers of the hogs belonging to the farmers thereabouts died therefrom, and those, for miles around, Seacord bought for his factory. The result was that his tank was overworked and had more to do then it could accomplish, and the accumulation of dead hogs and carrion during the warm weather of summer rendered the premises much more offensive than they had theretofore been, and the poisonous and offensive odors emanating therefrom permeated the atmosphere for a mile or more, interfering with the comfort of people passing and repassing upon the public highways, and causing great annoyance to many living in the neighborhood, and in some instances to such an extent as to induce the residents to close their doors and windows. Whatever is offensive, physically, to the senses, and by such offensiveness makes life uncomfortable, is a nuisance; and any business, however

lawful, which causes annoyances that materially interfere with the ordinary comfort, physically, of human existence, is a nuisance.   Wahle v. Reinbach, 76 Ill. 322.

It is urged the business of Seacord was useful and for the public good; that there was an absolute necessity the dead hogs and stock taken from the cars at Galesburg and the hogs dying of the cholera in the farming community near the tank, should not be left to rot at the stock yards or above ground throughout such community; that the tendency of his business was to abate and not to create a nuisance, and that if he used due care to so put up and equip the works at his tank as to obviate, so far as by known human appliances and inventions might reasonably be done, the offensive odors incident to the business, then he is to be held excused.   We can not approve of this argument, or concede the conclusion reached. The establishment of Seacord was carried on for profit, the same as any other business; and when it became a nuisance, it was indictable.   A person can not abate one nuisance by creating another, and then claim immunity.   Seacord was under no obligations to buy all the dead hogs throughout a large neighborhood, and gather them together, in a partially decomposed condition, upon his premises.   Had he refrained from so doing, the farmers would probably have buried them in the ground at intervals upon their farms, where they would have inconvenienced nobody.   If he could not dispose of all the dead stock from the stock yards at his tank without creating a nuisance, he might easily have had the surplus hogs buried in the ground and in various places.   Neither necessity nor the public welfare imposed upon him the duty to haul these dead animals off to another county and there render them into grease for the market.   In our opinion the doctrine announced in the citation from Russell on Crimes, 297, affords no excuse in the matter of this prosecution.   It is there said : "It would seem that in judging whether a thing is a public nuisance or not, the public good it does may, in some cases when the public health is not concerned, be taken into consideration, to see if it outweighs the public annoyance." This case falls clearly within the exception stated; foul stenches,

poisonous and offensive odors and unwholesome vapors tend to produce sickness and directly affect the public health.

There was no error in excluding testimony; the matter asked of Kernan had already been stated by him, and moreover it was immaterial.

The evidence in regard to the wagons and their contents, and the odor arising therefrom, was not improper; it tended to prove the charge in the indictment that the defendant caused the carcasses of dead animals, offal, filth and noisome substances to be collected and deposited near the dwelling houses of the prosecuting witnesses.

Three of the instructions asked by the defendant below were properly refused. One of these instructions was based on evidence to the effect that the defendant unexpectedly received more hogs in July than he could take care of and render. If so, it was in no sense an accident, and afforded no lawful excuse for creating a nuisance. He could have refused to buy dead hogs from the farmers, and could have buried such as he got from the stock yards and could not otherwise dispose of, without detriment to the public comfort and health. The second was refused for the quite sufficient reason that it improperly stated it was the policy of the law that it were better that ninety and nine or any indefinite number of guilty persons should escape, than that one innocent man should be convicted. Adams v. People, 109 Ill. 444. The third refused instruction was bad and vicious both in substance and in form. This was a criminal prosecution in the name and on behalf of the people of the State, and no one or more persons could, by their acts or conduct, bar the prosecution. It was wholly immaterial that some of the witnesses for the prosecution may have patronized the tank by selling dead hogs to its proprietor, or that others of them may also have been guilty of maintaining nuisances on their own premises. Such facts, if they existed, had no bearing upon the issues in this case.

The second instruction for the prosecution was not erroneous. It was not necessary the people should establish by the proofs that the defendant was influenced in what he did by a

wicked and criminal intent. The law presumes that every person intends the natural and probable consequences of his own acts, and the natural and necessary result of defendant's collecting and depositing upon his premises, near the dwelling houses of others, dead animals; offal and other noisome substances, was to cause a stench and create a nuisance. Moreover, regardless of the question of intention, it was criminal negligence to do the acts stated in the instruction, and such negligence will supply the place of the unlawful intention. The objections made to the sixth instruction given for the people have already been sufficiently answered by the views we have expressed herein.

We find no error in the record, and the judgment of the Circuit Court is affirmed.

*Affirmed.*