JOSHUA TEDFORD

*. v. .*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 20, 1905.*

1. INDICTMENT—*when an indictment is sufficiently plain to be understood.* An indictment charging, in substance, that the defendants have conspired and agreed together to do an illegal act injurious to the administration of public justice, by soliciting, persuading, enticing and inducing certain persons to leave the State or secrete themselves so that they could not be produced as witnesses at the trial of a certain person then under indictment for burglary in the criminal court of Cook county is sufficiently plain to be understood by the defendants and the jury, which is all the law requires.

2. SAME—*word "State," as used in section 272 of the Criminal Code, is synonymous with "jurisdiction."* An indictment charging that the defendants induced witnesses in a criminal case to absent, keep and secrete themselves out and away from the jurisdiction of the criminal court and to leave and depart from said jurisdiction is a sufficient averment that they were induced to leave the State, since the word "jurisdiction," as so used, is synonymous with the word "State" as used in section 272 of the Criminal Code.

3. SAME—*fact that testimony of witnesses induced to leave the State is material need not be alleged.* Parties conspiring together to induce persons who they know are witnesses in a criminal case to. leave the jurisdiction of the court so that they cannot be produced as witnesses are guilty under the statute, whether the testimony of such witnesses would be material and result in conviction or acquittal of the accused or not, and the indictment need not aver that the testimony of the witnesses was material.

4. CONSPIRACY—*conspiracy may be proved by circumstantial evidence.* A conspiracy may be proved by direct evidence or established by proof of circumstances from which a jury may infer its existence.

5. SAME—*what evidence is not competent as a defense to conspiracy.* In a prosecution for conspiracy to induce witnesses in a criminal case to leave the State, the guilt or innocence of the person at whose trial the witnesses should have testified is not material, and proof that he was guilty of the offense is properly denied admission.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

S. H. TRUDE, and JAMES T. BRADY, for plaintiffs in error.

WILLIAM H. STEAD, Attorney General, JOHN J. HEALY, State's Attorney, and HARRY OLSEN, for the People.

Mr. JUSTICE HAND delivered the opinion of the court:

The grand jury of Cook county, at the April term, 1903, returned into the criminal court of said county an indictment charging Joshua Tedford, David Dudenhaver, Frank Cantwell and William Davis with having conspired together to do an illegal act injurious to the administration of public justice, by persuading and inducing Frank Cantwell and Myrtle Lewis to secrete themselves and to depart the State so that they could not be produced as witnesses on behalf of the People upon the trial of William Hickey, who was under indictment in the criminal court of Cook county for the crime of burglary. The defendants filed a plea of not guilty, (after a motion to quash the indictment had been overruled,) and a trial was had which resulted in the conviction of all the defendants. William Davis was granted a new trial, Cantwell was fined $100 and Tedford and Dudenhaver were sentenced to the penitentiary. The judgment was affirmed by the Appellate Court for the First District, and Tedford and Cantwell have sued out a writ of error from this court, but Tedford alone has filed a brief.

The first contention made is, that the trial court erred in overruling the motion to quash the indictment. The indictment, omitting the formal part, is as follows: "That on the 24th day of July, in the year of our Lord 1902, the grand jury of said county duly returned, empaneled and

sworn as such grand jury at and for the July term of said criminal court of said Cook county, in the year of our Lord 1902, returned a certain indictment, in due form of law, against one William Hickey into said criminal court of Cook county, charging the said William Hickey therein with a certain criminal offense, to-wit, burglary; that said indictment so returned against the said William Hickey by said grand jury, aforesaid, was pending in said criminal court of Cook county from said 24th day of July, in the year of our Lord 1902, up to and including the 14th of October, in the year of our Lord 1902; that one David Dudenhaver, one Joshua Tedford, one Frank Cantwell and one William Davis, late of the county of Cook, on said 14th day of October, in the year of our Lord 1902, in said county of Cook, in the State of Illinois aforesaid, not being ignorant of the pendency of said indictment, as aforesaid, but then and there well knowing the said premises, as aforesaid, and then and there contriving and intending the due course of justice to obstruct and impede, did then and there, on the said 14th day of October, in said county of Cook, in the State of Illinois aforesaid, unlawfully, feloniously, fraudulently, maliciously, wrongfully and wickedly conspire and agree together with the fraudulent and malicious intent then and there wrongfully and wickedly to do a certain illegal act then and there injurious to the administration of public justice, to-wit, to then and there solicit, entice, persuade and induce the said Frank Cantwell and one Myrtle Lewis to absent, keep and secrete themselves, the said Frank Cantwell and said Myrtle Lewis, out of and away from the jurisdiction of said criminal court of said Cook county, and to leave and depart from said jurisdiction of said criminal court of said Cook county and from said Cook county, and not to appear as witnesses upon the trial of said indictment so pending against the said William Hickey, as aforesaid, when the same should come on for trial in said criminal court of said Cook county; that the said Frank Cantwell and said Myrtle Lewis were then

and there witnesses for and in behalf of the said People of the State of Illinois and against said William Hickey in said indictment against him so pending in said criminal court, as aforesaid, and that the said Frank Cantwell and said Myrtle Lewis were then and there within said county of Cook; that the testimony of said Frank Cantwell and said Myrtle Lewis was material then and there in said cause of action against said William Hickey upon the trial of said indictment so pending, as aforesaid, when the same should be tried in said criminal court, as the said David Dudenhaver, said Joshua Tedford, said Frank Cantwell and said William Davis then well knew, contrary to the statute and against the peace and dignity of the same People of the State of Illinois."

It is first urged the indictment is insufficient, as it is said it does not follow the language of section 46 of the Criminal Code, and that the facts averred are insufficient, in law, to show a crime has been committed. Section 46 of the Criminal Code provides: "If any two or more persons conspire or agree together * * * to do any illegal act injurious to the * * * administration of public justice, * * * they shall be deemed guilty of a conspiracy." And section 272, that "whoever, by hiring, persuasion, or otherwise, induces any witness in any criminal cause * * * to leave the State or secrete himself so that he cannot be produced as a witness at any * * * trial of the person so * * * charged, * * * shall be fined," etc. And section 408, that "every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the statutes creating the offense, or so plainly that the nature of the offense may be easily understood by the jury." While the offense is not charged in the exact language of the statute creating the offense, it is substantially so charged, and we think the charge that the defendants had conspired and agreed together to do an illegal act injurious to the administration of public justice, by soliciting, persuading, entic-

ing and inducing Frank Cantwell and Myrtle Lewis to leave the State or secrete themselves so that they could not be produced as witnesses at the trial of William Hickey, who was then under indictment in the criminal court of Cook county upon a charge of burglary, is so plain that the nature of the offense with which the defendants were charged could easily be understood by the jury and by defendants, and that is all that the law requires. *Glover* v. *People,* 204 Ill. 170.

It is next urged that the indictment does not charge that the witnesses were induced to leave the State, and for that reason it is insufficient. The indictment charges the witnesses were induced to absent, keep and secrete themselves out of and away from the jurisdiction of the criminal court, and to leave and depart from said jurisdiction and not to appear as witnesses. This was sufficient. The word "jurisdiction," as here used, is synonymous with the word "State," as used in section 272 of the Criminal Code.

It is further urged that there is no averment in the indictment that the witnesses Cantwell and Lewis had any knowledge which, had they been called as witnesses, would have shown the guilt of Hickey, or that said witnesses were known to the State, or that said witnesses were before the grand jury, or that their names were endorsed upon the indictment. The indictment avers that an indictment was pending in the criminal court against Hickey for burglary; that Cantwell and Lewis were witnesses on behalf of the People; that the defendants knew those facts, and that they conspired together to induce Cantwell and Lewis to secrete themselves and to depart from the jurisdiction of the court so that they could not be produced as witnesses against said Hickey upon the trial of said charge. If defendants knew that Cantwell and Lewis were witnesses against Hickey and they conspired together to persuade and induce them to secrete themselves or to depart the State so that they could not be produced as witnesses on the trial of Hickey, they clearly violated the statute, and they cannot excuse themselves upon

the ground that the evidence of the witnesses was not important or would not have tended to show Hickey guilty. The materiality of the evidence of the witnesses was not a question for defendants to determine, and that averment in the indictment was properly disregarded as surplusage. The obstructing of the due course of the administration of public justice means not only the prevention of the conviction or acquittal of an accused, but also means the interference with the due course of proceedings in the administration of public justice. (*Commonwealth* v. *Reynolds,* 14 Gray, 87; *State* v. *Holt,* 84 Me. 510; *People* v. *Keys,* 8 Vt. 66.) While the indictment charges the defendant Frank Cantwell with having conspired with the other defendants to induce himself to secrete himself or to depart from the State, it also charges that he conspired with the other defendants to induce Myrtle Lewis to secrete herself and to depart from the jurisdiction of the court. We are of the opinion the indictment was sufficient and that the court properly overruled the motion to quash.

The next contention is that the evidence is not sufficient to support the verdict. On the evening of the 4th of July, 1902, Thomas Jones made complaint to the police that the flat in which he lived, in the city of Chicago, had been forcibly entered and a trunk kept therein broken open and $1200 in cash taken therefrom. On the 24th day of the same month an indictment was returned by the grand jury charging William Hickey with burglarizing the said flat. Hickey was in Chicago on the evening of the 4th of July and had been there for some weeks, but during that night or the succeeding day he left the city and returned to New York, where his family resided and where he claimed his home. In the latter part of the following September, Tedford, who was on the police force of the city of Chicago, went to New York for the purpose of returning Hickey to Illinois as a fugitive from justice, by reason of certain extradition proceedings which had been instituted for that

purpose.  Hickey was arrested in New York City but declined to return to Chicago voluntarily, and sued out in that city a writ of *habeas corpus* for his discharge.  Upon a hearing he was remanded to the custody of Tedford and was returned to Chicago and confined in the Cook county jail.  On the 5th of October his mother, Mrs. Jane Hickey, arrived in Chicago with a view to render to her son such assistance as she could.  Prior to Tedford leaving New York City with her son she asked him when he would leave the city.  He informed her he did not know.  She said to him she wanted to wire a lawyer in Chicago to meet her son on his arrival and look after his case.  Tedford inquired whom she proposed to wire, and she gave him the lawyer's name.  Tedford said to her the lawyer named was not a criminal lawyer and for her to leave the getting of a lawyer for her son to him.  On her arrival in Chicago she employed an attorney to represent her son and soon met Tedford and Dudenhaver, and within a short time her son was admitted to bail.  Tedford objected to the employment of the lawyer whom she had retained and suggested to her the employment of Dudenhaver, and she and her son agreed to discharge the lawyer they had retained and to retain Dudenhaver.  Frequent meetings took place between Tedford, Dudenhaver and Mrs. Hickey and her son during the next few days in Chicago.  They met at the court house and on Twenty-second street, near Michigan avenue, and Mrs. Hickey and her son were at Dudenhaver's office and Dudenhaver was at the place where they stayed, on Illinois street.  It was suggested by Tedford and Dudenhaver to the Hickeys that the case could be settled out of court.  Tedford named $900 as the amount it would require to settle the case out of court.  He and Dudenhaver explained to the Hickeys that the material witnesses against William Hickey were Frank Cantwell and Myrtle Lewis, it being claimed by Tedford that Myrtle Lewis lived in the same building with Thomas Jones and wife, and that she would testify she saw Hickey enter their flat, and that by the pay-

ment of money the witnesses Cantwell and Lewis could be kept away from court, and that the case could be passed and finally dropped. Tedford stated to the Hickeys that Cantwell would leave the State and take Myrtle Lewis with him if he was paid $200. Mrs. Hickey at the second meeting with Tedford and Dudenhaver on Twenty-second street, near Michigan avenue, agreed to pay to Tedford $900. When the case against Hickey was called for trial on about the 14th of October, 1902, in the criminal court, Tedford and Dudenhaver were present in court. Tedford then stated to the assistant State's attorney and the presiding judge that he could not get two of the witnesses, and the case was passed until the next morning. On the next morning when the case was called the witnesses were not present, and Tedford then stated Myrtle Lewis was in the State of California. The case was again passed, and Tedford and Dudenhaver, as they left the court room, were arrested. The Hickeys, during their negotiations with Tedford and Dudenhaver, informed their attorney, and also the State's attorney, of the proposition of Tedford to settle the case out of court for the sum of $900, and that the witnesses Cantwell and Lewis were to be induced to depart from the State so that they could not be produced in court to testify against Hickey on the trial. The defendants Tedford, Cantwell and Davis were sworn as witnesses in their own behalf and denied all facts which tended to incriminate them and called numerous witnesses to prove their general good character. Dudenhaver did not testify. Davis was a police officer, and while he and Cantwell were present at some of the meetings of the parties they appear to have had but little to say.

A conspiracy may be proved by direct evidence or it may be established by the proof of facts from which a jury may infer its existence,—that is, by circumstantial evidence. (*Ochs* v. *People,* 124 Ill. 399.) The evidence on behalf of the People, found in this record, if true, establishes that Tedford and Dudenhaver agreed with Mrs. Hickey and her

son to induce the witnesses Cantwell and Lewis to leave the State of Illinois so that they could not be produced upon the trial of Hickey. Their object in keeping said witnesses away from the criminal court was that the prosecution of Hickey should fail for the want of proof, and the motive which prompted them was to obtain money from Mrs. Hickey. While the evidence was conflicting, the jury saw and heard the witnesses and were in a better position than we to determine which of the witnesses they should believe and what credit to give to the testimony of the defendants, and there being nothing so inherently improbable in the testimony of the witnesses for the People as to justify this court in disregarding their testimony as unworthy of belief, we are unable to say the verdict of the jury and the judgment of the court should be set aside for want of evidence.

The defense on the trial sought to show that William Hickey was guilty of burglarizing the Jones flat, that is,— the defense sought to try Hickey in this case. This the court declined to permit them to do. In this we think the court did not err, as Hickey was not upon trial, and the defendants could not justify their conduct in causing the witnesses in that case to leave the State, as for the purposes of their trial it was wholly immaterial whether Hickey was guilty or innocent.

The further contention is made that the jury were misdirected as to the law and that the court improperly refused certain instructions offered on behalf of defendants. The instructions presented on behalf of the People, as well as those upon behalf of the defendants, were very numerous. Forty-one instructions were given on behalf of the People and thirty on behalf of the defendants, and seventy-two offered upon behalf of the defendants were refused. We have examined the instructions given on behalf of the People and those given on behalf of the defendants, as well as those refused which were offered on behalf of the defendants, and are of the opinion the jury were properly instructed as to

the law of the case. The questions raised upon the giving and refusing of instructions are so numerous that we can not consider each of these questions separately, and it would serve no useful purpose to do so. The court did not commit reversible error in giving or refusing instructions.

Finding no reversible error in this record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*