**The People of the State of Illinois, Defendant in Error, v. Samuel F. Darr and Harvey Austin Six, Plaintiffs in Error.**

## Gen. No. 5,625.

1. APPEALS AND ERRORS—*amendment to the record.* An amendment to the record certified by clerk of lower court cannot be attacked by motion in the court of review where no bill of exceptions is taken of the proceedings by which the record is amended.

2. CONSPIRACY—*when means to be used need be set out.* Where conspirators agree together to do an unlawful act, it is not necessary to set out in the indictment the means whereby the conspiracy is to be accomplished; but when the conspiracy is to do a lawful act by unlawful means, the means to be used for its accomplishment must be set out.

3. CONSPIRACY—*indictment.* Indictment for conspiracy to cheat and defraud an insurance company *held* sufficient.

4. CRIMINAL LAW—*one good count sufficient.* Where there is one good count in an indictment, a conviction on a general verdict will be sustained though some of the counts are faulty.

5. CRIMINAL LAW—*credibility of witnesses.* The credibility of witnesses and the weight to be given their testimony is a question for the jury.

6. CRIMINAL LAW—*when verdict set aside.* A verdict will not be set aside on appeal unless the court is satisfied from a careful consideration of the whole testimony that there is reasonable doubt as to the guilt of the accused.

7. CONSPIRACY—*evidence.* On a prosecution for conspiracy to obtain money by false pretenses from an insurance company, it is not error to admit evidence of conversations about the insurance on the building in which the fire occurred.

8. CONSPIRACY—*limiting effect of evidence.* Where several defendants are on trial for conspiracy to defraud an insurance company, one of the defendants, who claims that he should not be affected by what one of the others said after the fire, should ask for an instruction limiting the effect of the evidence to the one against whom it was competent.

9. CONSPIRACY—*evidence.* On a prosecution for conspiracy to obtain money by false pretenses from an insurance company, it is not error to admit in evidence an unpaid draft for an insurance premium.

10. CONSPIRACY—*statements made after unlawful act.* On a prosecution for conspiracy to obtain money by false pretenses from an insurance company, statements made by one of the defendants after the fire are admissible in evidence against him.

11. CONSPIRACY—*similar acts by defendants on trial for conspiracy.* On a trial for conspiracy to obtain money by false pretenses from an insurance company, evidence that defendants had been engaged together in other cities in matters wherein there had been fires and loss by insurance companies is admissible on cross-examination of such defendants.

12. CONSPIRACY—*financial relations between conspirators.* On a trial for conspiracy to obtain money by false pretenses, the financial relations between the defendants may be brought out on cross-examination of such defendants.

13. CONSPIRACY—*threats to expose conspirators.* On a trial for conspiracy to obtain money by false pretenses, evidence that a man, not a party to the suit nor a witness, called one of the defendants by telephone and threatened to expose him if he did not pay a certain amount of money is properly excluded.

14. CONSPIRACY—*evidence sufficient to establish insurance.* On a prosecution for conspiracy to defraud an insurance company, there is sufficient evidence to show that property was insured where the secretary of the company identifies the policy, which is in evidence, and states the amount paid thereon after the fire.

15. CONSPIRACY—*circumstantial evidence of conspiracy.* An instruction that while the jury must be convinced from the evidence

of the guilt of defendants beyond a reasonable doubt in order to warrant a conviction, still the proof need not be the direct evidence of persons who saw the offense committed, but that the acts constituting the crime may be proved by circumstances, is proper.

16. CRIMINAL LAW—*weight to be given witness who has turned state's evidence.* An instruction that if the jury believes from the evidence that a certain witness testifying for the state was an accomplice in the crime charged, still he is a competent witness and his evidence should be considered in connection with the other evidence in the case as explained by the instructions is not erroneous.

17. CRIMINAL LAW—*when instruction as to weight to be given testimony is improper.* An instruction in regard to a witness who has turned state's evidence to the effect that if the jury believe beyond a reasonable doubt that his testimony has been corroborated by competent witnesses, or by facts and circumstances appearing in evidence, the jury has a right to give it the same degree of weight as any other witness is improper but not reversible error under the circumstances of this case.

18. CONSPIRACY—*to obtain money by false pretenses.* In a prosecution for conspiracy to cheat and defraud an instruction which proceeds upon the theory that it is only necessary that the intention be to cheat and defraud and omits the words "knowingly and wickedly" is not erroneous.

19. CONSPIRACY—*instructions that act of one conspirator is act of all.* An instruction that if the jury believe from the evidence in the case beyond a reasonable doubt that the fact of a conspiracy was shown by the evidence, then any act of anyone of the conspirators in the prosecution of the enterprise is considered the act of all, is not erroneous.

20. CRIMINAL LAW—*abstract instructions.* An instruction that the policy of the law deems it better that many guilty persons shall escape rather than one innocent person should be convicted and punished is properly refused.

21. CRIMINAL LAW—*failure to give instruction.* Defendants in a prosecution for conspiracy to defraud an insurance company cannot complain of failure to give an instruction that would permit the acquittal of one defendant and the conviction of another when they did not ask for such an instruction.

22. CRIMINAL LAW—*duty of jury to reconcile evidence with presumption of innocence.* On a trial for conspiracy, an instruction to the effect that it is the duty of the jury to reconcile, if possible, the evidence with the presumption that the defendants are innocent is properly refused.

23. CRIMINAL LAW—*instructions.* Absolute accuracy in instructions is not required, it being sufficient when the instructions considered as a whole, substantially present the law of the case fairly to the jury.

24. CRIMINAL LAW—*must be adverse ruling on remarks of counsel to be reviewable.* The language used by the assistant state's attorney in addressing the jury is not subject to review where there has not been a ruling thereon adverse to the party complaining.

25. CRIMINAL LAW—*remarks of counsel.* Error cannot be predicated on the fact that the assistant state's attorney in addressing the jury persisted in making improper remarks where the objections of defendants were each time sustained.

26. CRIMINAL LAW—*presumptions.* Where the record recites that the jury retired accompanied by a sworn officer, it is presumed that they returned in charge of the same officer.

27. CRIMINAL LAW—*new trial.* A new trial is not granted on the ground of newly discovered evidence which is merely cumulative and not conclusive.

Error to the Circuit Court of Peoria county; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed October 15, 1912. Rehearing denied April 2, 1913.

FRANK P. DRENNAN and FRANK A. HALL, for plaintiffs in error.

ROBERT SCHOLES, for defendant in error; HENRY E. PRATT, of counsel.

MR. JUSTICE WILLIS delivered the opinion of the court.

At the September term, 1911, of the Circuit Court of Peoria county, Samuel F. Darr and Harvey Austin Six, plaintiffs in error, together with Louis Wood Hill and John Doe were indicted for a conspiracy to obtain by means of false pretenses moneys from the German Fire Insurance Company of Peoria. The person represented as John Doe seems not to have been arrested. Hill turned state's evidence. Darr and Six were tried, convicted and sentenced to the penitentiary for a term of three years and sued out this writ of error to review the judgment, and Darr obtained a *supersedeas* upon presenting a record to a judge of this court in vacation which contained no arraignment and no plea of not guilty and which was certified to be complete.

Thereafter an amendment to the record was made in the court below and filed here showing that both Darr and Six waived arraignment and plead not guilty. A motion was made here, supported by affidavits, attacking the amended record. The amendment was certified to be true by the clerk of the lower court. If it was in any way improperly obtained in the court below, a bill of exceptions should have been taken of the proceedings by which the record was amended. That was not done and we must take the record certified by the clerk of the court below to be correct.

The indictment contained five counts. The first count charged that the defendants falsely and fraudulently conspired together to obtain knowingly and designedly by means of false pretenses $2,500 of the money of the German Fire Insurance Company of Peoria, a corporation, with intent feloniously to cheat and defraud said company of said money.

The second count charged that in carrying out the conspiracy the defendants falsely and feloniously conspired together to obtain by false pretenses from said insurance company a bank check of the value of $650 with intent to cheat said company of said money, and feloniously conspiring together obtained a policy of insurance on a certain lot of household goods against loss by fire to the amount of $2,000 in the name of Darr; that afterwards, in pursuance of said conspiracy, the defendants did falsely represent and pretend to the said insurance company that a loss by fire to said lot of household goods was $650, whereas, in fact, the goods were not of the value of $650 and were not damaged by fire to that amount, and the amount to be paid by said insurance company under said policy was not $650, as the defendants knew at the time they so falsely pretended.

The third count made similar charges as the first and second and alleged that the defendants, with the fraudulent intent, as set out in the first and second

counts, obtained a policy of $2,500 on said household
goods in said company; and in pursuance of the con-
spiracy to cheat and defraud said company by means
of false pretenses said household goods were feloni-
ously burned, with the knowledge and procurement
of the defendants, with felonious intent to injure and
defraud the insurance company; and that they after-
wards falsely pretended that the damage to said goods
was $650 and that the amount to be paid Darr by said
insurance company on said policy of insurance was
$650, whereas the loss on said goods did not exceed
$300, and that the defendants falsely represented to
the insurance company that said damage by fire to
said goods was occasioned in some manner unknown
to Darr, whereas the burning of said goods was with
the knowledge, consent, design, procurement and act
of said defendants, and that by means of said false
representations and pretenses the defendants falsely
and feloniously conspired to defraud the, insurance
company.

The fourth and fifth counts are similar, and charge
that the defendants conspired together with a fraud-
ulent and malicious intent to obtain $2,500 of said in-
surance company by false pretenses.

It is urged that the indictment is insufficient for the
reason that neither of the counts of the indictment
sufficiently and with apt words state and charge the
offense of conspiracy to obtain money by false pre-
tenses. The rule in this state is, that where the ob-
ject of a conspiracy is unlawful,—that is, where the
conspirators agree together to do an unlawful act,—it
is not necessary in the indictment to set out the means
whereby the conspiracy was to be accomplished and
carried into effect; that it is only necessary to set out
the means to be used for its accomplishment when the
conspiracy is to do a lawful act, but unlawful means
are to be used to carry it into effect. Chicago, W. &
V. Coal Co. v. People, 214 Ill. 421. All the counts of
the indictment charge a conspiracy to obtain money

by false pretenses and all charge a conspiracy to cheat and defraud by false pretenses, contrary to the form of the statute in such case made and provided. It is illegal at the common law to obtain money or property or to cheat and defraud by means of false pretenses. 19 Cyc. 386; 2 Bishop on Criminal Law (7th Ed.) Chap. 10. Section 46 of the criminal code of this state makes it a criminal offense for two or more persons to conspire or agree together to obtain money or other property by false pretenses, and section 96 of the criminal code makes it a criminal offense to cheat or defraud another by any false pretense. If, therefore, it were held that the several counts of this indictment did not set out the false pretenses which were used to accomplish the objects of the conspiracy charged in the indictment, we would be of the opinion that the indictment was sufficient. The second and third counts of the indictment do set out the false pretenses which were used as a means to accomplish the object of the conspiracy with sufficient particularity. The statute provides, and in Tedford v. People, 219 Ill. 23, the court said, on page 26: ''Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the statutes creating the offense, or so plainly that the nature of the offense may be easily understood by the jury.'' Clearly the second and third counts of this indictment state the facts so plainly that the nature of the charge might be easily understood by the jury.

In Johnson v. People, 22 Ill. 314, the indictment charges that the defendants ''wickedly and unjustly devising and intending one Joshua B. Casey to defraud and cheat of his goods and property, they did then and there falsely and fraudulently conspire, combine, confederate and agree together among themselves to get and obtain, knowingly and designedly, by false pretenses, of the said Joshua B. Casey, one horse, of the value of six hundred dollars,'' with the intent to

defraud and cheat him of the same, and the court, in disposing of the question as to the sufficiency of this charge in the indictment, said, on page 316: "The first question presented is whether the court erred in overruling the demurrer to the indictment. Our statute has declared it to be an offense to obtain goods by false pretenses. And 'undoubtedly, as obtaining goods by false pretenses, is a statutory misdemeanor, conspiracies to effect them are indictable.' Whart. Crim. Law, 674."

If any count of an indictment is good, it is sufficient to sustain a conviction. Lyons v. People, 68 Ill. 271; Thomas v. People, 113 Ill. 531; Ochs v. People, 124 Ill. 399; People v. Smith, 239 Ill. 91. In the Ochs case, *supra,* on page 414, it is said: "Whether there is anything of substance in this variance, we need not consider, for even if the count be defective, that would be of no avail, it being the well settled principle that a conviction on a general verdict will be sustained, although some of the counts are faulty, if there be one good count in the indictment." Hiner v. People, 34 Ill. 297.

The evidence shows that Darr and Six were in the real estate business and that Six was also in the business of buying and selling horses; that Hill was in the harness business and had been associated with Six in various horse deals prior to March 17, 1911; that Darr was in straitened circumstances financially; that he had an interest in the Aldine Hotel in Peoria; that on February 10, 1911, he secured $13,000 insurance on the building; that on February 17, 1911, he secured $2,000 more insurance on the building; that March 1, 1911, he secured $2,500 insurance upon the household goods in the building; that in the latter part of February or the first part of March, 1911, the building became unoccupied and a portion of the household goods were removed to Springfield; that on March 2, 1911, a small fire occurred in the building which was extinguished; that on March 17, 1911, the building was practically consumed by fire together

with damage to its contents; that Darr made proofs of loss to the furniture and received $650 in settlement.

Hill testified that he had previously agreed with Six to burn the building; that Darr was to collect the insurance and that he was to receive $250 for setting the fire; that Darr, Six and he left Springfield on the evening of the 16th of March, 1911, at about 8 P. M., and on their arrival in Peoria went to the Aldine Hotel and made an inspection of the same; that they then went to the Majestic Hotel in Peoria, where Darr registered in his own name and Hill registered under the name of Hall and Six as James Knott, Darr occupying one room, Hall and Knott another; that they met at the Aldine Hotel the next morning, and Darr stayed but a few minutes; that he and Six nailed up the doors and windows; that in the afternoon he and Six purchased an oil stove, some groceries and five gallons of kerosene and had the same delivered at said building in order to show that some one lived there; that they poured the oil down the wooden elevator shaft; that the stove was placed near the elevator shaft for the purpose of showing that it might have caused the fire; that thereupon Six left the building and at about 8 P. M. Hill set the fire; that on March 20, 1911, Six gave Hill a check for $75 drawn by Darr, in part payment for setting the fire; that afterwards, in a conversation in Andy Terrill's office in Springfield, Darr told Hill to cash the check and said that he would give Hill the balance the following week.

Andy Terrill testified that some time in January, 1911, Darr came to his office and told him that he had been approached by a party who offered to burn the Aldine Hotel for ten per cent. of the insurance and that he advised Darr not to do it; that about three weeks before the fire Darr came to his office again and said: "That man Hill has been after me again and he wants to burn that building, what do you think of it?

I just want your advice;" that a short time after the fire Darr and Hill met in his private office.

Six denied making a contract with Hill to burn the Aldine Hotel; denied going to Peoria on March 16, 1911; denied staying at the Majestic Hotel; denied being in Peoria on March 17, 1911, and denied that he went with Hill to buy the stove, groceries and oil. Six also testified that he never saw Hill until the 20th of March, 1911, when he gave him the $75 check in exchange for some harness and received a receipt therefor. Darr testified that he never saw Hill until in April, 1911. He denied that he had ever been approached by Hill on the subject of burning the Aldine Hotel and denied that he had a conversation with him in Terrill's office a short time after the fire, but admitted being in Peoria on the 16th and 17th of March, 1911, and that he stayed at the Majestic Hotel. He also admitted that at about 10 o'clock in the morning of the 17th he went to the Aldine Hotel. Six testified that he was at home in Springfield during the evening of March 16th and called five witnesses to testify to that effect. All these witnesses contradict each other as to the time they saw Six that evening. For anything that appears in their evidence, he could easily have been there at about the time they testified to and still have caught a car for Peoria at 8 o'clock. Six and Darr both admit that Darr was indebted to Six, for which he had no security; that Six had previously mortgaged some property in order to loan Darr the money and that a short time after the fire he cancelled the debt on receipt of an automobile. Six explained the $75 check by saying that it was given him by Darr in part payment of the indebtedness and given by him to Hill in exchange for some harness; but admitted that he never received any harness from Hill. Hill testified that the receipt was given as a blind.

Proof was offered that Hill was addicted to the use of liquor and morphine, and his reputation for truth

and veracity was questioned.    There was also proof both in support of and against Six's reputation for truth and veracity.    The question of the credibility of witnesses and the weight to be given to their testimony was for the jury, and a court of review will not set aside the verdict unless it is "satisfied, from a careful consideration of the whole testimony, that there is reasonable doubt of the guilt of the accused." Flanagan v. People, 214 Ill. 170; People v. Deluce, 237 Ill. 541; People v. Nall, 242 Ill. 293.

It is also contended that the court erred in admitting evidence of a conversation relative to taking out insurance upon the building in which the fire occurred; in admitting evidence that a draft given by Darr in payment of the premium was not paid and admitting such draft in evidence; in permitting Hill, who is termed in law an accomplice, to testify to a conversation which he claimed he had with Darr in Terrill's office after the fire; in permitting the people, on the cross-examination of one of the defendants' witnesses, to show that Darr was indebted to the witness; and in compelling Six, upon cross-examination, to state the circumstances of a fire which occurred in a store owned by his wife; also in regard to the amount of money Darr had borrowed of Six; also that it was improper practice to take witnesses subpoenaed for the defendants before the grand jury.    We are of the opinion that the court did not err in admitting evidence of a conversation about the insurance on the building in which the fire occurred nor relative to the draft nor what Darr told Hill after the fire.    If Six claimed that he should not be affected by what Darr said after the fire, he should have asked an instruction limiting the effect of the evidence to Darr, as it was clearly competent against the latter.    We are of the opinion that it was not error to show on the cross-examination of defendants' witness his financial relations to Darr, nor was it error to take defendants' witnesses before the grand jury.    Moreover, no objec-

tion was made to the admission of the testimony showing that the witnesses had been taken before the grand jury. If these defendants had been engaged together in other cities in matters wherein there had been fires, and loss by insurance companies, we do not see why this and also the financial relations between Darr and Six might not be brought out on cross-examination.

Defendants sought to prove that a man, not a party to the suit nor a witness, called Darr on the telephone and threatened to turn him in for burning the Aldine Hotel if he did not pay him a certain amount of money. This evidence was properly excluded.

It is contended that there is no evidence tending to prove that the property was ever insured. The secretary of the insurance company was a witness and identified a policy issued to Darr and told the amount paid thereon after the fire. The policy and the proofs of the loss and the receipt of the money were all in evidence. Complaint is made of the giving of the people's 18th, 35th, 38th, 44th, 45th, 50th, 51st, 55th, 57th and 58th instructions and of the refusal of two of the instructions requested by plaintiffs in error.

Instruction 18 was in the form approved by the supreme court in other cases.

Instruction 35 was on the alibi sought to be established by Six and was not applicable to this case for the reason that he was not seeking to prove an alibi at the time the conspiracy was formed, but to prove that he was not at certain places where the people's witnesses placed him when the conspiracy was being carried into effect and it might well have been refused, but plaintiffs in error's given instructions fully explained the law of alibi as applied to the evidence and the jury could not have been misled by this instruction.

Instruction 38 told the jury that while they must be convinced from the evidence of the guilt of the defendants beyond a reasonable doubt in order to war-

rant a conviction, still the proof need not be the direct evidence of persons who saw the offense committed, but that the acts constituting the crime may be proved by circumstances. Instruction 44 told the jury that if they believe from the evidence that the witness, Hill, was an accomplice in the crime charged, still, under the law, he is a competent witness and his evidence should be considered in connection with all the other evidence in the case as explained in the instructions. We see no error in these two instructions.

Instruction 45 told the jury that if they believed from the evidence beyond a reasonable doubt that the testimony of the witness Hill had been corroborated by competent witnesses, or by facts and circumstances appearing in evidence, the jury had a right to give it the same degree of weight as any other witness who may have testified in the case. We doubt the propriety of this instruction. While Hill had been corroborated in certain features of his testimony, yet there were other circumstances against him as to whether he had been impeached; whether he was a morphine fiend; and whether he had offered to change his testimony if he was given a certain compensation; but we do not think that the judgment should be reversed on that account.

Instructions 50, 51 and 56 defined the crime of conspiracy and when considered together, we do not think the jury could have been misled by 50 or 51. The criticism of 55 is that it does not contain the elements necessary to constitute the crime of conspiracy to obtain money by false pretenses under the statute, for the reason that it omits the words, "knowingly and wickedly" and proceeds upon the theory that it is only necessary that the intentions be to cheat and defraud. This question was fully considered in answering the objections to the sufficiency of the indictment.

Instruction 57 told the jury that if they believe from the evidence in the case beyond a reasonable doubt that the fact of a conspiracy was shown by the evi-

dence, then in that state of the proof, any act of any one of the conspirators in the prosecution of the enterprise is considered the act of all. This we think a correct statement of the law.

Instruction 58 told the jury that if they believed from the evidence beyond a reasonable doubt that defendants conspired and agreed with Hill to set fire to the building mentioned in the indictment and to secure by means thereof the property of the insurance company, and that Hill carried into execution the agreement, it is immaterial whether or not the other defendants were present at the time of the fire. This instruction is incorrect in alluding to the building alleged in the indictment when no building is mentioned in the indictment. It should have said the building mentioned in the evidence, but, as no building was mentioned in the indictment, the defendants could not have been injured by the instruction.

The first refused instruction said that the policy of the law deems it better that many guilty persons shall escape rather than one innocent person should be convicted and punished. This instruction does not state a correct rule of law. Adams v. People, 109 Ill. 444; Seacord v. People, 22 Ill. App. 279; aff'd 121 Ill. 623. Moreover, it contained but a mere abstract principle of law and for that reason also it was not error to refuse it. Devlin v. People, 104 Ill. 504.

Refused instruction two was proper except that it said that it was the duty of the jury to reconcile, if possible, the evidence with the presumption that the plaintiffs in error were innocent. This is not the law. It was possible to presume that all the evidence introduced by the people was false, but it was not the duty of the jury to do that. Their duty was to reconcile the evidence with the presumption of the defendants' innocence if this was reasonably possible and consistent with a full consideration of all the evidence in the case.

Fault is found with the failure to give an instruction

that would permit the acquittal of one defendant and the conviction of another. This was a question that concerned the defendants, and if they wished such instructions they should have asked for them, which they did not do.

We think defendants' exceptions to the instructions no reason for a reversal. In Ritzman v. People, 110 Ill. p. 371, the court said: "It has often been said, and we repeat here, that to require absolute, literal, technical accuracy in instructions, would, as a general rule, defeat the ends of justice, and bring the administration of the criminal law into disrepute and just contempt. It is sufficient when the instructions, considered as a whole, substantially present the law of the case fairly to the jury. That, we think, has been done in this case."

A special bill of exceptions set out certain language used by the assistant state's attorney in addressing the jury. In each instance where defendants objected, the objections were sustained. If the assistant state's attorney persisted in these remarks after the objections had been sustained, defendants did not object to such persistence, nor take any exceptions to the persistence, nor have they any exceptions upon the subject. It is true that under the amendment of the practice act, in force July 1, 1911, and before this trial, it is not necessary to preserve an exception, but under that provision there must have been a ruling adverse to the party complaining. All the rulings on the objections to the remarks of the assistant state's attorney were in favor of the defendants. Conceding the conduct of counsel in the respects stated may be subject to criticism, yet it cannot be regarded as of so gross a character as to require a reversal of the judgment.

Complaint is made that when the jury returned their verdict they were not accompanied by a sworn officer. The record recites that they retired in charge of a sworn officer and that thereafter they returned into court with their verdict. The defendants made no

objection to the jury returning without a sworn officer. There is no statement in the record that they were not accompanied by a sworn officer, and as they retired in charge of a sworn officer, the presumption is that they returned in charge of the same officer. It is urged that the court erred in refusing a new trial on the ground of newly-discovered evidence. The affidavits filed by plaintiffs in error upon the motion for a new trial show that whatever new evidence it was proposed to introduce upon another trial was merely cumulative and impeaching and not conclusive in its character. A new trial will not be granted on the ground of newly-discovered evidence which is merely cumulative and not conclusive. Klein v. People, 113 Ill. 596; Bean v. People, 124 Ill. 576; Harter v. People, 204 Ill. 158. The practice is well settled in this state that a new trial will not be granted for the purpose of permitting the introduction of such additional evidence. Gilmore v. People, 124 Ill. 380.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*