(No. 11232.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* TONY VENCKUS, Plaintiff in Error.

*Opinion filed April 19, 1917.*

1. CRIMINAL LAW—*instruction as to excusable homicide should not omit absence of culpable negligence.* Homicide cannot be excused as a misadventure unless the act of the slayer was lawful and done without any intention to kill and without culpable negligence, and an instruction defining excusable homicide, and, in effect, directing a verdict, should not be given without the requirement that the killing must not be the result of culpable negligence.

2. SAME—*when instruction directing a verdict of not guilty in a murder trial should not ignore crime of manslaughter.* An instruction in a murder trial directing a verdict of not guilty although the jury might believe and find from the evidence that the defendant was engaged in an unlawful act which resulted in the killing should not be given, for such killing would be manslaughter.

3. SAME—*what is involuntary manslaughter.* Involuntary manslaughter consists in the killing of a human being, without any intent to do so, in the commission of an unlawful act, or of a lawful act without due caution or circumspection.

4. SAME—*when firing a revolver is not a lawful act.* Intentionally firing a revolver on a public highway in close proximity to twenty or more people, some of whom were behind the person doing the shooting and most of them in front of him, is an unlawful act, where no one was offering him any violence or saying anything to him at the time he fired the shot, which he testified was fired to drive the people away from his place.

5. SAME—*actual intent to kill does not enter into the definition of murder.* Murder may be committed without any actual intent to kill anyone, and it is not necessary that the party charged therewith should have malice towards the particular party killed, as malice may be inferred when an act in itself unlawful is done deliberately and with the intention to injure or do great bodily harm to those against whom it is directed and death is occasioned by it.

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding.

ROY F. HALL, and B. JAY KNIGHT, (KARL J. MOHR, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, WILLIAM JOHNSON, State's Attorney, and ARTHUR R. ROY, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The plaintiff in error was indicted at the October term, 1916, of the circuit court of Winnebago county, for the murder of Stanley Paczuillis. He was convicted of manslaughter and adjudged to serve an indefinite term in the penitentiary at Joliet and has sued out this writ of error.

Plaintiff in error was born in Russia, is twenty-seven years of age and has been in this country about seven years. In the summer of 1916 he was living with his wife about five miles south of the city of Rockford on a five-acre tract of land, which he farmed and raised potatoes and garden vegetables and feed for his cow and horses. He also had a lot of pigs and chickens, geese and ducks, which were confined by fences and gates. A public gravel road runs east and west by plaintiff in error's premises. There is a fence on the north line of his premises, and the front of his house is about forty feet south of the front gate in that fence. The gate is seventeen feet south of the south line of the gravelroad, and there is a ditch about one and one-half feet deep on the south line of the gravel road. On Sunday morning, August 27, 1916, three automobile loads of Russians or Lithuanians,—about thirteen men and seven women,—gathered at plaintiff in error's home and had what they called a "beer party." Jim Jeselum took the party there in his automobile, making three trips in the morning and three trips in the evening to take the guests to and from the beer party. Jeselum invited the guests to this party at the request of plaintiff in error, according to Jeselum's testimony, but plaintiff in error denied making any such a request and claims that they came there of their own accord, without any notice to him. At any rate, three kegs of beer were taken to plaintiff in error's house for the

beer party by John Cervinski and another man on Saturday night, August 26, and stored in plaintiff in error's cellar, according to his own testimony. The parties drank beer there that day until late in the afternoon and ate lunch that they had brought with them. Plaintiff in error drank with them part of the time and also worked around his home, feeding the pigs and taking care of his stock generally. Sometime in the afternoon Cervinski bought a chicken from plaintiff in error and paid him a dollar for it. Cervinski was to select and catch the chicken, and while he and another one of the party were trying to catch it they opened and left open the gates, and all of the plaintiff in error's pigs, geese and ducks got out and were scattered around his premises, according to his claim. Cervinski caught the chicken he had selected but was dissatisfied with it and told plaintiff in error it was not even worth fifty cents. Plaintiff in error returned Cervinksi his dollar and then Cervinski tried to buy some pigs. Bad feeling finally arose between the two and they quarreled. Steve Micks, another one of the visitors, also got into the quarrel, and they all became very angry and tried to fight but were prevented from so doing by the other parties. Micks testified that plaintiff in error slapped him in the face. Plaintiff in error denied that in his testimony and testified that Micks slapped him in the face. Micks is corroborated by the other witnesses who testified on that point. The row occurred at five o'clock P. M. or later, and while it was progressing plaintiff in error threw the three beer kegs into the public road and ordered all the guests to leave the premises. All the guests promptly left his house and yard and walked out into the public road to take the automobile for their homes except Cervinski and Micks, who said they had paid to stay and had a right to stay. Others of the guests, however, persuaded them not to have any trouble there and took the two with them out into the road in front of the house, and they were all crowded in and around the automobile which

had been driven up in front of the gate or a little east of it and headed east, and it was being filled by the guests for a trip home. Plaintiff in error claims that at this time Cervinski, who was near the automobile, said to him: "You poor farmer, we showed you; you drove us out from the place and we had to show you." He further claims that just after Cervinski spoke these words a shot was fired from the automobile, and that he then went into his house and got his gun; that he came back out of his premises, and while standing on the east side of his gate, with his gun in his hand behind him, he fired a shot from behind his back; that he only fired one shot, and that he did not point his gun at anyone and did not know anyone was behind him, and that when he turned around he saw the deceased lying in the ditch, on the line of the roadway in front of the gate. All the witnesses (except plaintiff in error) who saw the shooting testified positively that the automobile was to the east or northeast of the gate and that the deceased was near the automobile trying to get into it when plaintiff in error began firing; that he fired two or three shots from near the vicinity of his front gate, in a northeasterly direction, while holding his revolver directly in front of him and pointed straight at the crowd in and around the automobile, not over fifteen feet away from him; that no one else fired a shot on that occasion, and that he fired all the shots that were fired there and was very angry when he fired them. After the shots were fired the deceased was found lying in the ditch by the side of the roadway, in a northeasterly direction from the gate, as shown by all the witnesses except plaintiff in error, who testified that he was in a northwesterly direction from the gate. He was shot in the back, about two inches to the left of the spinal column, below the lower rib, and the ball went through the body and lodged underneath the skin in the anterior part of the body and below the ribs, from the effects of which wound he died at two o'clock A. M. the next day.

Plaintiff in error contends that his own testimony shows that the shooting and the killing of the deceased were purely accidental and that the killing was a homicide by misadventure, as defined by our Criminal Code, and that the court erred. in refusing to give proper instructions offered by him on that theory. The shooting itself was not accidental, but is clearly shown by the evidence of all the witnesses, including plaintiff in error himself, to have been done intentionally by plaintiff in error. According to the testimony of all the eye-witnesses except plaintiff in error, he shot directly at the crowd with the intention of shooting somebody. By his own testimony he fired off his revolver, held behind him, intentionally, for the purpose of driving away the crowd, and killed Paczuillis without any intention of shooting him or anyone else. The killing cannot be excusable homicide by misadventure unless his act was a lawful act and done without any intention to kill and without culpable negligence. (Hurd's Stat. 1916, Crim. Code, secs. 152, 290.)

Complaint is made of the court's refusal to give plaintiff in error's refused instructions 6, 9, 10, 11, 13 and 15. Instruction No. 9 bears upon the question of reasonable doubt, and that question was fully covered by other instructions given by the court. Instructions 10 and 13 were properly refused because they do not state the law correctly. They both directed a verdict of not guilty although the jury might believe and find from the evidence that the defendant was engaged in an unlawful act which resulted in the killing of Stanley Paczuillis. It might be true that he would not be guilty of murder, but such a killing would be manslaughter. Involuntary manslaughter consists in the killing of a human being, without any intent to do so, in the commission of an unlawful act, or a lawful act without due caution or circumspection. (Crim. Code, secs. 143, 145.) Refused instruction No. 15 reads as follows:

"The court instructs the jury that excusable homicide by misadventure is when a person in doing a lawful act without intention of killing yet unfortunately kills another, as where a man is at work with an ax and the head flies off and kills a bystander, or where a parent is moderately correcting his child, or master his servant or scholar, or an officer punishing a criminal, and happens to occasion death, it is only a misadventure, for the act of correction was lawful. And in this regard the court instructs the jury that in all other instances which stand upon the same footing of reason and justice as those enumerated shall be considered justifiable or excusable homicide. And the court further instructs the jury that in the event of the homicide appearing to be justifiable or excusable, the person indicted shall, upon his trial, be fully acquitted and discharged. And in this case the court instructs you that the question of whether or not the killing of Stanley Paczuillis by Tony Venckus was accidental or by misadventure is a question of fact for you to decide, having in mind all of the facts and circumstances in connection with said killing."

The foregoing instruction contains a part of the statutory definition of excusable homicide by misadventure as given in section 152 of the Criminal Code. Section 290 of the Criminal Code provides that "acts committed by misfortune or accident shall not be deemed criminal, where it satisfactorily appears that there was no evil design or intention, or culpable negligence." The said instruction also includes sections 153 and 154 of the Criminal Code. By this instruction the jury would understand that plaintiff in error was to be acquitted if the killing was a homicide by misadventure or by misfortune or accident, and it is clear that the instruction does not give the full definition of such a killing and the circumstances under which one may be properly acquitted for such a killing. Homicide by misadventure, and for which an accused may be excused or acquitted, is the accidental killing of another where the

278 — 9

slayer is doing a lawful act, unaccompanied by any criminally careless or reckless conduct. (*State* v. *Lodge*, 33 Atl. Rep. [Del.] 312.) The same ideas are incorporated in said sections 152 and 290 of the Criminal Code, and an instruction that in effect directs a verdict should not be given by simply giving the statutory definition of homicide by misadventure, without incorporating in it the further requirement that such killing must not be the result of culpable negligence.

There is a further reason why the refusal of the said instruction was not reversible error. The act of plaintiff in error in question was not a lawful act if only his evidence is considered. The evidence shows, beyond all reasonable doubt, that no one was doing or attempting to do plaintiff in error any violence whatever at the time he shot the deceased. No one was even quarreling with him or saying anything to him at and just prior to the moment he fired the fatal shot. His own testimony does not tend in the least to contradict those facts. He positively testified that he fired the shot that struck the deceased to drive the people away from his place. At that very moment they were all trying to get away, and all of them had abandoned all attempt to continue the quarrel or do any violence to him. The deliberate and intentional firing of his revolver, under such circumstances and for such a purpose, was not a lawful act. He was on a public highway, in close proximity to twenty or more people, some of whom, according to his own testimony, were behind him and most of them in front of him. He was not only doing an unlawful act but was performing it in a reckless and culpable manner, without even looking to see if there were any persons behind him.

Instructions numbered 6 and 11 as offered by plaintiff in error contained parts of instruction 15,—that is, the last parts thereof without the definition of homicide by mis-

adventure,—and for the same reason they were properly refused.

Plaintiff in error has no real ground of complaint as to the verdict and judgment in this case. He was really very fortunate that he was not convicted of murder under the evidence in the case. The evidence is overwhelming that he fired the revolver directly at the parties in and around the automobile. If he unlawfully and with malice afore-thought fired his revolver at any member of the party with intent to injure that person and missed him and killed the deceased he would be clearly guilty of murder. So would he if he pointed the revolver at the crowd generally and with malice fired his revolver with recklessness and with-out concern as to the consequences and killed the deceased, although he may not have intended, in fact, to shoot or injure any person. To constitute murder it is not neces-sary that the party charged therewith should have malice towards the particular party killed. Actual intent to kill does not enter into the definition of murder. Malice may be inferred when an act in itself unlawful is done deliber-ately and with intention of mischief or great bodily harm to those on whom it may chance to light, if death is occa-sioned by it. So murder may be committed without any actual intent to kill anyone. *Adams* v. *People,* 109 Ill. 444; *Dunaway* v. *People,* 110 id. 333.

The series of instructions given in this case embraced the law of the case, and when considered as a whole they contain every proposition of law that was properly submit-ted by plaintiff in error, and the court committed no re-versible error by the refusal of instructions or otherwise. It is plainly apparent that substantial justice has not been denied plaintiff in error, and that he could not reasonably expect a lighter sentence should the cause be submitted to another jury.

The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*