(No. 12610.—Judgment affirmed.)

The People of the State of Illinois, Defendant in Error, *vs.* Mark P. Bransfield *et al.* Plaintiffs in Error.

*Opinion filed June 18, 1919—Rehearing denied October 9, 1919.*

1. Criminal law—*what is not an unlawful seizure of the defendant's books of account.* Where defendants to a charge of embezzling the funds of a bank were co-partners in the real estate business and kept books of account, in which, as officers of the bank, they also kept items of account in the bank business, it is not a violation of the fourth amendment to the Federal constitution to grant a petition of the State's attorney to have the books of account turned over to him by a bankruptcy court, which was settling up the affairs of the partnership.

2. Same—*the defendants are not protected from introduction of books of account to which they are no longer entitled.* Where officers of a bank are being tried for embezzling its funds the People may introduce in evidence books of account used by the defendants in a real estate business, in which they also kept certain accounts of the bank, and which they had surrendered to a bankruptcy court in a proceeding from which they did not appeal, as the title to the books is no longer in the defendants but in the trustee in bankruptcy.

3. Same—*when evidence is sufficient to show defendant was an officer of a bank.* A defendant who, with others, is charged with embezzling the funds of a bank under sections 75 and 76 of the Criminal Code, is sufficiently shown to be an officer or agent of the bank where there is evidence that he acted as assistant cashier and signed his name as such and the testimony of at least one witness that he was assistant cashier.

4. Same—*when party is guilty as a principal.* One who stands by and aids and abets in the commission of a crime is guilty as a principal; and this rule applies to the assistant cashier of a bank who knowingly participates in the fraudulent transactions carried on by the bank.

Writ of Error to the Criminal Court of Cook county; the Hon. George Kersten, Judge, presiding.

Timothy J. Fell, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and GROVER C. NIEMEYER, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

The plaintiffs in error were indicted for embezzlement by the grand jury of Cook county on April 16, 1918. The indictment consisted of two counts. The first count is based on section 75 of the Criminal Code, and alleges that on the 19th day of May, 1917, the Auburn State Bank of Chicago was a banking corporation; that Thomas F. McFarland was at that time the president of said bank; that Mark P. Bransfield was the vice-president and cashier of the bank; that William J. Cline was an officer, agent and servant of the bank, to-wit, assistant cashier, and performed the duties of assistant cashier of the bank; that all of the parties on the 19th day of May, 1917, embezzled the property and funds of the bank in the sum of $275,000. The second count of the indictment is based on section 76 of the Criminal Code, and charges that the Auburn State Bank was a corporation engaged in the banking business May 19, 1917, and that Thomas F. McFarland was then the president of said bank; that Mark P. Bransfield was then vice-president and cashier of the bank, and that William J. Cline was then an officer, agent and servant of the bank, to-wit, assistant cashier, and that he acted as and performed the duties of assistant cashier of the bank; that the plaintiffs in error then were officers, agents, servants and employees in the employ of said bank and on May 19, 1917, embezzled a large amount of personal goods, funds, money and property, set out in the indictment in the usual description of currency as found in the first count of the indictment. On motion of the plaintiffs in error a bill of particulars was filed. Thereafter the motion of plaintiffs in error to quash the indictment, and each count thereof, was

heard and overruled. Thereupon each of the plaintiffs in error pleaded not guilty. A trial of the cause was had, and the jury found each of plaintiffs in error guilty as charged in the indictment and found the value of the property embezzled and stolen by each to be $275,000. Motions for a new trial and in arrest of judgment were entered on behalf of plaintiffs in error and overruled and they were sentenced to the penitentiary as provided by law. The bank was closed as insolvent by the State Auditor on May 22, 1917.

Prior to and at the time of the commission of the alleged crime charged in the indictment Thomas F. McFarland and Mark P. Bransfield were engaged in the real estate and loan business. They had offices adjoining the Auburn State Bank. They kept a complete set of books in connection with their real estate and loan business. In these books appeared many items of accounts which the evidence showed were rightfully and in fact accounts of said bank and not of said partnership. On May 25, 1917, after the indictment in question had been returned, an involuntary petition in bankruptcy was filed against them in the United States district court. At that time their copartnership books and papers were in their possession and so remained until June 15, 1917. Upon application by the receiver in bankruptcy to the United States district court an order was entered directing them to immediately turn over and deliver to the receiver all the partnership books, records, etc. The application for this order was resisted by each of them, and they refused to deliver their said copartnership books to the receiver for the reason that they were then under arrest on criminal charges preferred against them by the State's attorney of Cook county charging each of them with divers offenses, among which was the offense of embezzlement, and urged before the United States district court that if so delivered their partnership books might be used against each as evidence in the criminal case then pending, contrary to the provisions of the constitution of

the United States and the constitution and bill of rights of the State of Illinois. Upon hearing in the United States district court an order was entered providing that they immediately deliver to the receiver all books of account, files, records and documents relating to their business, and that the receiver shall use them, or permit any other person to use them, only for the civil administration of the estate of the bankrupts; that the receiver should not part with the books of account, etc., until the bankrupts had an opportunity to question their constitutional privilege in the same manner as if the books of account, etc., had remained in the possession of the bankrupts. Later the Greenebaum Sons Bank and Trust Company, which had been acting as receiver, was appointed trustee in bankruptcy. No other or further order was entered in the bankruptcy proceedings in the foregoing matter.

On February 27, 1918, the State's attorney of Cook county filed a petition in the bankruptcy proceedings stating that there were then pending in the criminal court of Cook county indictments against Mark P. Bransfield, Thomas F. McFarland and William J. Cline, charging them, as officers of the Auburn State Bank of Chicago, with receiving deposits with knowledge on the part of each of them that the bank was insolvent, and that there was also pending another case charging each of the defendants with embezzlement; that said causes were being prepared for trial by the State's attorney, and that the books, records, etc., pertaining to the Auburn State Bank were then in the possession of the State's attorney and were being examined preparatory to such trial; that the affairs and transactions of the bank were confused with the business affairs and transactions of the co-partnership of Bransfield & McFarland; that various items and accounts of transactions with divers persons doing business with the Auburn State Bank were carried upon the books and among records, papers, etc., of Bransfield & McFarland; that it was essen-

tial that the books and records of the co-partnership be introduced and used on the trial of the causes then pending in the criminal court, and prayed for an order for leave to obtain the books, records and papers of the co-partnership for said use. The plaintiffs in error Bransfield and McFarland resisted said petition on the ground that the books, records and papers of the co-partnership had been by them turned over under an order of the United States district court, to be used only for civil administration of the estate of the bankrupts; that the proposed use by the State's attorney would be a violation of their constitutional rights and in effect compel them to furnish evidence that might tend to incriminate them. On March 5, 1918, the United States district court entered an order granting leave to the trustee in bankruptcy to turn over and deliver the books, records and files of the co-partnership to the State's attorney for examination, and granted leave to the trustee to comply with any subpœna that might issue out of the criminal court of Cook county for the production of the books and records. On the trial in this case a motion was made to preclude the State's attorney from introducing the books and records in evidence on the foregoing grounds. This motion was denied by the trial court. At the conclusion of all of the evidence a motion was made to exclude the evidence of the co-partnership matters and the testimony of all witnesses relating to the entries in said records, which was overruled.

It is contended by the plaintiffs in error that the introduction of the evidence objected to constitutes reversible error; that to permit the introduction of the books in evidence was a violation of the fourth amendment to the constitution of the United States, which declares: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." It is also contended that the use of said books in evidence against the plaintiffs in error was, in ef-

fect, compelling the plaintiffs in error Bransfield and Mc-
Farland to be witnesses against themselves, contrary to the
fifth amendment of the Federal constitution, which pro-
vides: "No person  *  *  *  shall be compelled, in any
criminal case, to be a witness against himself." As we
have seen, the books of the partnership were lawfully in
the hands of the trustee in bankruptcy by an order of the
bankruptcy court at the time they were by that court or-
dered to be turned over to the State's attorney. It fol-
lows that there was no search or seizure as contemplated
by the fifth amendment of the Federal constitution, and
said amendment was not violated.

It is, however, earnestly urged that the use of the part-
nership books in the trial of this cause compelled plaintiffs
in error Bransfield and McFarland to be witnesses against
themselves. These books had in them many accounts which,
the facts showed, in reality belonged to the bank, so that
it might well be doubted whether they were the private
books of the partnership as to such accounts. However
that may be, the books were legally in the hands of the
trustee in bankruptcy. Plaintiffs in error had parted with
possession of said books, and, while it was over their pro-
test, the receiver was by the finding of the bankruptcy court,
which was not appealed from, entitled to the books, and
the property right therein became vested in the receiver and
later in the trustee. This ruling is well sustained in the
case of *In re Harris,* 221 U. S. 274, where the court said:
"The question is not of testimony but of surrender; not
of compelling the bankrupt to be a witness against himself
in a criminal case, present or future, but of compelling him
to yield possession of property that he no longer is entitled
to keep. If a trustee had been appointed, the title to the
books would have vested in him by the express terms of
section 70, and the bankrupt could not have withheld pos-
session of what he no longer owned, on the ground that
otherwise he might be punished. That is one of the mis-

fortunes of bankruptcy if it follows crime. The right not to be compelled to be a witness against oneself is not a right to appropriate property that may tell one's story. As the bankruptcy court could have enforced title in favor of the trustee it could enforce possession *ad interim* in favor of the receiver." Again, it was said by the court in *Johnson* v. *United States,* 228 U. S. 457: "A party is privileged from producing the evidence but not from its production. The transfer by bankruptcy is no different from a transfer by execution of a volume with a confession written on the fly-leaf. It is held that a criminal cannot protect himself by getting the legal title to corporate books. (*Wheeler* v. *United States,* 226 U. S. 478; 57 L. ed.; 33 Sup. Ct. Rep. 158.) But the converse proposition is by no means true, that he may keep the protection from the introduction of documentary evidence that he would have had while he retained it, after the title and possession have gone to someone else. It is true that the transfer of the books may have been against the defendant's will, but it is compelled by the law as a necessary incident to the distribution of his property,—not in order to obtain criminal evidence against him. Of course, a man cannot protect his property from being used to pay his debts by attaching to it a disclosure of crime. If the documentary confession comes to a third hand *alio intuitu,* as this did, the use of it in court does not compel the defendant to be a witness against himself." It follows from these decisions that there was no violation of said amendment in admitting the books of the partnership. Such is likewise the rule as announced by this court. *People* v. *Munday,* 280 Ill. 32; *People* v. *Hartenbower,* 283 id. 591.

It is also contended by the plaintiffs in error that the trial court erred in admitting testimony relating to separate and distinct offenses not mentioned in the bill of particulars without limiting such admission to the purpose of showing criminal intent. The evidence complained of was compe-

tent for the purpose of showing criminal intent. There appears to have been no request to have the effect of it limited to that purpose, nor was an instruction asked by plaintiffs in error so limiting the effect of such testimony to the jury.

It is also contended that there is no evidence in the record directly or indirectly connecting plaintiff in error William J. Cline with any of the transactions mentioned in the bill of particulars, and that there is no proof in the record that Cline was ever appointed or elected assistant cashier of the Auburn State Bank. The evidence shows that he receipted for a mortgage known as the Peter Foley note, for $4500, itemized in the bill of particulars, and that that mortgage was never returned to its rightful owner. It also appears from the evidence that he signed, as assistant cashier, different false reports to the State Auditor as to the condition of the bank. It is a well known rule of law that one who stands by and aids and abets in the commission of a crime is guilty as principal. It also appears from the evidence that Cline knew of the various fraudulent transactions of Bransfield & McFarland; that he transferred on the books of the bank the account of the Commercial National Fire Insurance Company, the Insurance Exchange of Members of the National Retail Dry Goods Association, and others, to the accounts of Bransfield & McFarland; also that he assisted in handling transactions in the bank through the use of forged and fraudulent notes, including indorsements and payments of like character in connection therewith. These are but instances of his connection with the fraudulent transactions carried on in the bank which make it impossible to conceive of his not being conversant with what was going on. In fact, it would not seem possible for these transactions to have been carried on without his knowledge and assistance. We are of the opinion that the jury were justified in finding plaintiff in error Cline guilty. There is ample evidence in the record to establish

that he was acting in the capacity of assistant cashier of the bank. By sections 75 and 76 of the Criminal Code it is provided that the offenses in said sections described, and which are charged in the indictment herein, may be committed by officers, agents, clerks or servants of a corporation or banking corporation. The evidence that Cline was acting as assistant cashier in the bank, that he signed his name as such, and the testimony of at least one witness in the record stating that he was such assistant cashier, is sufficient to satisfy the requirements of sections 75 and 76.

It is also contended on behalf of plaintiffs in error that the court erred in not quashing the indictment on the ground that it failed to set forth the ownership of the treasury notes, bank bills or coin described in the indictment. This contention is without merit. The reading of the indictment is sufficient to show that the allegation of the ownership refers to the sundry current bank bills, currency, treasury notes and coin described in the indictment as well as to notes, checks and orders for the payment of money therein referred to.

It is also complained that the court erred in giving certain instructions. We have examined these instructions and find no reversible error therein.

There is no contention that the verdict is not sustained by the evidence or that the plaintiffs in error are not guilty. The assignments of error all relate to matters occurring in the conduct of the trial. The plaintiffs in error were proven guilty beyond all reasonable doubt, and on examination of the entire record we are of the opinion that there was no reversible error therein.

The judgment of the criminal court of Cook county will therefore be affirmed.        *Judgment affirmed.*