(No. 37326.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN M. GRATTON, Plaintiff in Error.

*Opinion filed September 27, 1963.*

McCoy, Ming & Leighton, of Chicago, (George N. Leighton, of counsel,) for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Edward J. Hladis and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

A jury in the criminal court of Cook County found the defendant, John M. Gratton, guilty of armed robbery and he was thereafter sentenced to the penitentiary for a term of 10 to 25 years. He prosecutes this writ of error for review contending that an erroneous jury instruction and an improper ruling on evidence denied him a fair trial, and that he was not proved guilty beyond a reasonable doubt.

On the afternoon of Friday, April 14, 1961, an office in an industrial plant in Chicago was held up by a lone man, armed with a gun, who made off with six money sacks containing approximately $3700, much of which was in coin. Two weeks later five of the sacks were found concealed under the beams at the top of an elevator cage, the elevator shaft being located about 300 feet from where the robbery occurred. The single employee present in the office, Clair

McCreedy, was deliberately shot in the head twice by the gunman. Defendant, it appears, had worked at the plant for a 14-month period prior to February 7, 1961, and was familiar with the buildings, as well as the routine which caused substantial sums of money to be accumulated in the office or room involved, on Friday of each week. Without going into specific detail, several plant employees testified to having seen defendant around the premises on the day of the robbery, while McCreedy identified defendant as the man who shot him and took the money. The defense was an alibi that defendant had been at work in a store owned by his brother at the time of the crime, and his testimony and that of his brother to such effect received corroboration from various customers and deliverymen who were purportedly in the store during the afternoon in question.

To support his contention that he was not proved guilty beyond a reasonable doubt defendant mounts a two-pronged attack contending first that inconsistencies in the testimony of identification witnesses, particularly that of McCreedy, discredit and weaken their testimony, and, second, that the evidence of the prosecution in its entirety is so improbable, unconvincing and contrary to human experience that it becomes the duty of this court to reject and set aside the jury's verdict. We do not find that either contention is well taken.

The inconsistencies claimed are, for the most part, the product of semantics or are arrived at by relating selected answers of the witnesses to each other completely out of context. When the entire record is read in orderly sequence and the words employed are accorded their plain and ordinary meanings, neither inconsistency nor contradiction appears which in any manner so weakens and discredits the witnesses as to create a reasonable doubt of guilt. The record reflects, and no claim is made to the contrary, that all of the witnesses who identified defendant had ample and favorable opportunity to see and observe him on the day in ques-

tion. Their credibility, together with the weight to be given their testimony, was properly a matter for the jury.

Defendant's claim that the evidence of the prosecution is improbable and unconvincing is built chiefly around *People v. Dawson,* 22 Ill.2d 260, and is bottomed on the premise that it is beyond human experience and belief that defendant would go to a place where he had worked and was known and there commit an armed robbery. There are, however, few if any controlling factual similarities between this and the *Dawson* case and, what is more, it has not been unusual in the annals of crime for former employees to return to familiar grounds and commit armed robbery. (*E.g. People v. Crump,* 5 Ill.2d 251 and 12 Ill.2d 402; *People v. Bernovich,* 391 Ill. 141.) The facts here show that the office robbed was an isolated one in a large industrial complex, and that McCreedy customarily worked alone in the office collecting and counting money taken from vending machines located throughout the plant. Under the circumstances a potential robber would expose himself only to one person while actually committing the crime, and we think it of great significance here that McCreedy was deliberately shot twice in the head, even though he offered no resistance, in an apparent effort to forestall identification.

Witnesses estimated that the weight of the six money sacks taken would be about 200 pounds, and it was McCreedy's testimony that the robber had put the sacks on a hand truck and wheeled them out the door. McCreedy also stated that about "thirty seconds to a minute" after the robber had closed the door, he arose, opened the door, and saw an employee "on the hoist truck" to whom he called and who helped him down to first aid. Looking to this evidence, defendant asserts it would have been impossible for the robber to have gotten away and put the money sacks on top of the elevator in the short period involved. The elevator shaft, however, was only 300 feet from the room where the robbery occurred, thus making it neither difficult

nor impossible for one to quickly disappear with the money, particularly one who was familiar with the plant and had been employed as a hoist operator as defendant said he was.

Considering the entire record we conclude there was satisfactory and sufficient evidence which, if believed by the jury, served to establish defendant's guilt beyond a reasonable doubt and to justify the verdict returned. No basis appears to warrant our interference with that verdict.

The first of the alleged trial errors relied upon for reversal is that the court erroneously refused to permit defendant's counsel to examine a police officer concerning ballistic tests made of a pistol owned by defendant which was introduced into evidence by the prosecution. In addition it is contended that it was error to admit the pistol into evidence and, although we find no basis in the record for such a claim, that defendant was denied access to favorable evidence in the hands of the prosecution in violation of the principles announced in *People* v. *Moses,* 11 Ill.2d 84. None of these points, however, were raised in defendant's written motion for a new trial and are not therefore subject to review. Where the grounds for a new trial are stated in writing, the accused is limited on review to the errors alleged therein and all other errors are deemed to have been waived. *People* v. *Needham,* 22 Ill.2d 258; *People* v. *Bravieri,* 21 Ill.2d 369; *People* v. *Flynn,* 8 Ill.2d 116.

Defendant was arrested at his home the day after the robbery, and at the trial, with no objection by defendant, the prosecution introduced proof that he had then been taken to McCreedy's hospital room where he stood silent and said nothing when McCreedy said: "That's the man that shot me." Thereafter, over defendant's objection, the jury was instructed: "The Court instructs the jury that an admission may be implied from the conduct of a person charged with the commission of a crime who remains silent when another states in his hearing that he was concerned in its perpetration, if the statement is made under circum-

stances which allow him an opportunity to reply and under which persons similarly situated would ordinarily deny the imputation." Defendant, while conceding as he must that the instruction states a true proposition of law, (see: *People* v. *Smith,* 25 Ill.2d 219; *People* v. *Bennett,* 3 Ill.2d 357; *People* v. *Nitti,* 312 Ill. 73,) insists that it should not have been given in this case because the evidence shows he did not know why he had been arrested, and also that it should have been accompanied by a limiting instruction informing the jury that an admission, unlike a confession, is not conclusive evidence of guilt but is merely a fact tending, in connection with other facts in evidence, to establish the guilt of the accused.

The first contention of defendant is squarely met by *People* v. *Smith,* 25 Ill.2d 219. Here, as in the *Smith* case, it should have been obvious to defendant that he was being accused of a crime, and there is no showing that he did not have ample opportunity to reply to McCreedy's accusation or that he was under any restraint from doing so. Moreover, in looking to the fairness of the instruction, the jury was fully aware of defendant's testimony that he did not know why he was arrested, and under the instruction as given could properly consider this as a "circumstance" which contributed to defendant's silence in face of the accusation.

It may be conceded that an admission is not of itself sufficient to authorize or sustain a conviction, but is merely a proper circumstance to be considered along with the other facts in evidence to determine the guilt or innocence of the accused. (See: *People* v. *Hodson,* 406 Ill. 328, 338; *People* v. *Hobbs,* 400 Ill. 143, 150; *People* v. *Nitti,* 312 Ill. 73, 92.) However, countless decisions place the burden of submitting limiting instructions upon the party who desires the advantage of the limitation, and that burden was not met by the defendant here. In *People* v. *Laster,* 413 Ill. 224, 232, where the defendant contended on appeal that the jury

had not been instructed as to the proper applicability of certain evidence, we held she could not be heard to complain where she had offered no instruction setting forth the purposes for which such evidence might be considered. (See also: *People* v. *Mason,* 301 Ill. 370, 379.) Again, it has been held that it is the duty and burden of defendant to request limiting instructions that the confession of a codefendant has no application to the defendant, (*People* v. *Bartz,* 342 Ill. 56,) or that an admission of one defendant is not binding on another defendant. (*People* v. *Darr,* 179 Ill. App. 130, aff'd 262 Ill. 202; *People* v. *Rewland,* 335 Ill. 432.) And, in like manner, where evidence of other crimes is admitted to prove the element of intent, it has been held the affirmative duty of the defendant to request instructions limiting the purpose of such evidence and explaining the legal theory under which it was admitted. See: *People* v. *Smith,* 18 Ill.2d 547; *People* v. *Botulinski,* 392 Ill. 212; *People* v. *Bransfield,* 289 Ill. 72; *Glover* v. *People,* 204 Ill. 170.

Under the principle of the foregoing decisions it would be enough to say that defendant, having failed to request instructions limiting and explaining the scope, effect and value of a tacit admission, cannot now be heard to complain. However, the instruction here does not say or suggest that an admission may be taken as conclusive evidence of guilt, and recourse to the other instructions reveals that the jury was fully instructed on defendant's defense of alibi and was admonished several times that "all" of the evidence in the case was to be considered in arriving at their verdict. We are of the opinion, therefore, that the jury was in no manner confused or misled into believing that the admission impliable from defendant's silence could be treated as conclusive evidence of guilt.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*