THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALFREDO CASTILLON, Defendant-Appellant.

(No. 54141; ▮▮▮▮▮▮▮▮

First District—March 17, 1971.

Gerald W. Getty, Public Defender, of Chicago, (James B. Haddad, George L. Lincoln, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Zenon Forowycz, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

Defendant, Alfredo Castillon, was charged with the offense of armed robbery. After a bench trial he was convicted and sentenced to a term of not less than two, nor more than four years in the Illinois State Penitentiary. On appeal defendant contends (1) he was denied effective assistance of counsel by the failure to secure an interpreter until the time of trial and (2) he was denied a fair trial since the trial court accepted the complaining witness's testimony as true before defendant had been afforded an opportunity to present his case.

At trial, Edward Rivera, the complaining witness, testified that at approximately 8:30 P.M., on August 9, 1968, he went alone to the South Pacific Restaurant on Randolph Street in Chicago. In the restaurant he met the defendant Alfredo Castillon. He had never seen nor made the acquaintance of defendant Castillon before. The two sat at the bar and talked about general things. During their conversation of about two hours, Rivera drank between 5 and 10 shots of Chivas Regal, a scotch. He testified he felt "high". At one point, Rivera told Castillon he had to go to eat, and Castillon suggested that Rivera go with him to his house where they could possibly eat with his wife and niece. Rivera agreed to the suggestion.

The two left the restaurant together and took the "El" to Irving Park Road. After getting off, they went to a tavern where Castillon asked for someone who wasn't there. They then proceeded to an apartment building which the defendant claimed was his home. They walked up to the second floor where Castillon led Rivera out to the fire escape and put a knife to his back. Castillon demanded Rivera's wallet and three or four times threatened to kill him if he didn't give him his money. Rivera gave the defendant a $5.00 bill and told him that it was all he had. Castillon reached inside Rivera's suit coat and took his wallet which contained $22.00 or $23.00 and a couple of credit cards. After the money was taken, the defendant kept his knife on Rivera's back and led him outside. Rivera subsequently contacted the police.

Jim Honson, the bartender at the South Pacific Restaurant, testified that on August 9, 1968, he was tending bar at the restaurant from 5:00

P.M. to 2:00 A.M. He saw Castillon and Rivera sitting together that night. Honson had known Castillon for about 8 to 9 months prior to August 9, since Castillon usually came to the bar a couple of times a week. Honson had known Rivera for about five years, since Rivera came to the bar often, approximately twice a week throughout the five-year period. On that date in question, Honson served Castillon and Rivera drinks. He also saw the two leave together at approximately 10:00 or 10:30 P.M. At approximately 11:30 P.M., he received a phone call from Rivera who told him he was at the Police Station and that Castillon took his money.

Alfredo Castillon offered alibi testimony in his own behalf. He testified he was a dishwasher on the night in question at the "La Margarita" Restaurant. He stated he did not rob Edward Rivera.

Caesar Dovalino, the operator of La Margarita, testified that defendant worked for him as a dishwasher during the month of August, but was not sure the defendant worked for him on the night shift of August 9-10.

At the commencement of trial, the defense attorney indicated that the defendant had requested a bench trial. The trial court asked defendant whether he wished to waive his right to trial by jury and be tried by a court without a jury. Defendant replied: "No—I mean, yes, sir. I want to explain to you, I don't understand too much the English. I hope I understand you. So, you mean if I want you to try it right now?"

The court was not satisfied defendant was making a knowing jury waiver and stopped the proceedings to obtain an interpreter. Defense counsel then commented on his ability to communicate with the defendant:

"I had difficulty communicating with him and since then I have been able to talk to him and he understands me perfectly and he is able to converse with me. We talked about the case, what questions I would, of course, ask him, and put him on the stand and tell the truth and he understands completely."

THE COURT: "I am sure you have done everything in your power to properly defend this man, however, I am not satisfied that we can proceed to trial without an interpreter. I want someone to tell this man in his own language what is transpiring and we are beginning right at the beginning of the trial with a waiver of a very basic constitutional right, the waiver of a jury trial, and I am not satisfied that this record shows he understands that.

What are we going to do when other things develop during trial? We must have an interpreter."

An interpreter was obtained. After consulting with his interpreter, de-

fendant again stated he wished to waive his right to a jury trial. Then the trial commenced.

Defendant contends he was denied effective assistance of counsel by the failure to secure an interpreter before trial. The thrust of defendant's argument is that failure to remove an obvious language barrier prior to trial denied him effective assistance of counsel at trial. The existence of such a barrier, according to defendant, appears on the face of the record since defense counsel lacked knowledge of defendant's alibi, namely, his job as a dishwasher at La Margarita Restaurant, until the defendant took the stand and was cross-examined.

■■■ We need not consider defendant's claim since it was not asserted in his written motion for a new trial. Defendant filed an eight-point motion for a new trial, but did not include the effective assistance of counsel contention he now presents on appeal. It is settled law that after a jury trial, all nonjurisdictional allegations of error which are not asserted in the written motion for a new trial are deemed to have been waived and need not be considered by the reviewing court. (*People v. Gratton* (1963), 28 Ill.2d 450, 454, 192 N.E.2d 903, 905, *People v. Irwin* (1965), 32 Ill.2d 441, 443, 207 N.E.2d 76, 78 and *People v. Fleming* (1964), 54 Ill.App.2d 457, 203 N.E.2d 716.) It is within our discretion, though, to review such allegations of error.

■■ We have examined the record and find the facts do not support defendant's contention. Save for his bald assertion that defense counsel lacked knowledge of defendant's alibi, defendant has not demonstrated he was denied the effective assistance of counsel. The record shows the alibi defense caught the prosecution and not the defense by surprise. The prosecution filed a motion pursuant to Section 114—14 of the Criminal Code asking the defense to supply the prosecution with a list of alibi witnesses if the defense had an alibi. The prosecution received no such information. When defendant testified, on direct examination by defense counsel, he was a dishwasher on August 9, 1968, at La Margarita Restaurant, it was the prosecution and not the defense that expressed surprise. Defense counsel when questioned by the court as to why the defense made no reply to the State's alibi motion, claimed privilege. Defense counsel earlier claimed that he communicated with his client about the case, what questions would be asked and what would be said on the stand. The record does not show the existence of such a language barrier between defense counsel and defendant as to deny defendant the effective assistance of counsel.

■■ Accordingly, we find (1) that the trial court acted within its discretion in obtaining an interpreter for the defendant at the commencement of trial; (*People v. Shok* (1957), 12 Ill.2d 93, 145 N.E.2d 86; *Peo-*

*ple v. Soldat* (1965), 32 Ill.2d 478, 207 N.E.2d 449; (2) the representation by defense counsel was not of such low quality as to reduce the trial to a farce, (*People v. Washington* (1968), 41 Ill.2d 16, 241 N.E.2d 425); and (3) the record does not support defendant's claim he was denied the effective assistance of counsel. The cases defendant cites for support are factually inapposite to the case before us. In *Orosco v. Cox* (10th Cir. 1966), 359 F.2d 764, the court found that defendant who had counsel and an interpreter made a voluntary and understanding plea of guilty. In *U.S. v. Paroutian* (2nd Cir. 1962), 299 F.2d 486, 490, the court found defendant's presence at a preliminary hearing without an interpreter did not impair his ability to present his claim. In *Townsend v. Bowmar* (6th Cir. 1965), 351 F.2d 499, the court found a Tennessee Statute requiring that every person have at least two days after arrest and return of indictment for the preparation of a defense was violated when defendants were rushed to trial after only 30 minutes consultation with counsel. We reject defendant's first contention.

Defendant next contends he was denied a fair trial since before the trial judge had even heard the defendant's case, he allegedly indicated he had taken as true the complaining witness's testimony, and upon that prejudgment failed to scrutinize certain weighty issues of identification. When defense counsel requested the production of pictures of defendant's show-up, the court stated:

> "Well, you are entitled to them. I am really not much concerned about the show-up because this witness Rivera was with the person for four or five hours on the night of August 9, drinking with him at a restaurant, was on the El with him, went to another tavern with him, and went to a building with him and I don't know how much help he would require to identify a man under those circumstances, but you are entitled to look into it."

■■ On the basis of the court's response to defendant's request, defendant claims the trial judge had already determined that defendant was guilty before all the evidence was heard. We believe the trial court's comment was directed toward the issue of whether witness Rivera's in-court identification of the defendant was tainted by the show-up. To assume the trial judge believed at that point defendant was guilty is to take the comment out of the context of the discussion in which it was made. (*People v. Shockey* (1966), 66 Ill.App.2d 245, 213 N.E.2d 107.) We reject defendant's second contention and affirm the judgment of the Circuit Court of Cook County.

Judgment affirmed.

BURMAN and DIERINGER, JJ., concur.