THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TODD BODOH, Defendant-Appellant.

First District (6th Division)   No. 1—87—2419

Opinion filed June 15, 1990.

Kevin P. Bolger, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Rene Goldfarb, James E. Fitzgerald, and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant, Todd Bodoh, was convicted of reckless homicide and driving while under the influence of intoxicating liquor. The trial court merged the two convictions for sentencing purposes, and defendant was sentenced to two years' imprisonment and one year of mandatory supervised release. Defendant appeals, alleging that the trial court improperly permitted the jury to consider the results of a blood test not taken pursuant to the Illinois Department of Public Health regulations; that defendant received ineffective assistance of counsel; that the trial court erred in denying defendant's request for a continuance to obtain new counsel; that the trial court improperly allowed the jury to receive a diagram which allegedly was based on hearsay statements; and that the trial court committed errors, the cumulative effect of which requires reversal of defendant's conviction.

As to the collision, the following facts were adduced at trial. On December 20, 1985, at approximately 5:33 p.m., defendant was involved in a motor vehicle accident with a vehicle driven by Sharon Haberkorn. The accident occurred in the southbound lanes of Route 171, one-half mile south of Route 83. As a result of the collision, Marcella Botica, a passenger in the Haberkorn vehicle, suffered fatal injuries. Haberkorn sustained multiple injuries. She does not remember the accident itself, but does remember leaving the shopping mall which is in the area of the accident. She also remembers her actions while in the immediate vicinity of the mall.

Michael Kopischke, who was driving northbound on Route 171, testified that he observed a gray or silver Corvette, defendant's vehicle, enter from a side street onto Route 171 in the northbound curb

lane. He observed the Corvette move from the curb lane to the left lane, pass a car travelling in the curb lane, and then swerve back over to the curb lane. As the Corvette moved back into the curb lane, Kopischke saw a yellow Cadillac in the left lane. The Corvette accelerated and passed the Cadillac. As the Corvette accelerated, it began to sway from side to side and then swerved into oncoming traffic, colliding with a southbound vehicle. Kopischke did not see any vehicle cut in front of the Corvette at any time.

Illinois State Trooper Glen DeVries arrived at the scene about 10 minutes after the accident and observed that there had been two separate accidents, one involving defendant's vehicle and the Haberkorn vehicle, and another involving a tan Cadillac. After making measurements, DeVries contacted Trooper Peter Chico, an accident construction officer, who took photographs and additional measurements of the scene.

At the hospital where defendant had been taken for his injuries, defendant told the officers that he had been cut off by a 1972 green Chevelle and stated that this was why he ended up in the southbound lane. DeVries did not see any green paint on defendant's car and none of the witnesses mentioned seeing a green Chevelle in the vicinity of the accident. Through his experience in accident reconstruction, Chico determined that the rear damage to defendant's vehicle was caused or "induced" by the front-end collision and not by a rear-end impact.

Defendant testified that he drove on Bell Road and entered into traffic at the intersection of Bell Road and Route 83 and 171 after stopping for a stop sign. He drove directly into the curb lane of Route 171. He then changed from the curb lane to the inside lane. Defendant did not switch lanes to pass a slower moving vehicle. Defendant stated that while he was travelling in the inside lane, a green car cut in front of him and slammed on its brakes. He then had to slam on his brakes and was hit from behind, forcing his vehicle into oncoming traffic. At this time, his car collided with the Haberkorn vehicle. Defendant did not recall seeing a yellow Cadillac in front of him. Although he stated that he was hit from behind, he admitted that he never saw the car that hit him.

With regard to defendant's consumption of intoxicating liquor, the following evidence was offered. At the hospital, the troopers detected an odor of alcoholic beverage on defendant's breath. Defendant told them that he had been coming from a party and that he had consumed eight beers throughout the day. Trooper Chico stated that defendant was 5 feet 10 inches in height and weighed 160 pounds.

The troopers read defendant the implied consent warnings, which stated that his license would be suspended if he refused to submit to any chemical test. The troopers did not receive any response from defendant, and they ordered a phlebotomist to withdraw blood in their presence.

Terry Swanburg, a phlebotomist at Palos Community Hospital, testified that she drew defendant's blood at 9:45 p.m. Swanburg drew the blood using a kit provided by the Department of Public Health. The troopers were present. Swanburg gave the two vials containing defendant's blood to DeVries. He placed them in an evidence locker and later sent them to the laboratory for analysis. The results of the laboratory were sent to DeVries' attention at the police station several days later. The analysis revealed a blood-alcohol concentration of 0.087.

Defendant's blood had been drawn earlier in the evening by Debra Kutka, also a phlebotomist at the hospital. Kutka testified that at 7:55 p.m., she drew specimens of blood from defendant for alcohol-level analysis at the request of Dr. Rose, the emergency room physician. Following the procedure, she took the specimen, labeled with the date, time and her initials, to the hospital laboratory where Mike Navarro, a medical technologist, performed the analysis. Navarro testified that he used a calibrated automatic clinical analyzer. He stated that the analyzer automatically issues an error code when the machine is not functioning properly. There was no error code on defendant's test. Navarro's analysis revealed an alcohol concentration of 0.122. Navarro testified that pursuant to hospital procedures, blood samples are kept for one week and then are discarded.

Christopher Long, chief toxicologist for the Illinois State Police, testified as to the interpretation of the blood test results. Long testified that a 160-pound person who stopped drinking at 5:35 p.m. and had a blood-alcohol content of 0.122 grams at 7:55 p.m. and 0.087 grams at 9:45 p.m. would be able to metabolize alcohol at the rate of 0.020 grams per hour. Long used this metabolization rate to determine that this same individual would have a blood-alcohol concentration ranging from approximately 0.14 to 0.18 at 5:33 p.m., and would have had approximately nine beers within the course of the hour-long period beginning at 4:30 p.m., and ending at 5:30 p.m. Long testified that his extrapolations related to total body burden of alcohol and not to blood-alcohol concentration.

With respect to the consumption of liquor, defendant testified that he was employed on the night shift at the B.O.C. division of Fisher Body. At approximately 6 a.m., he left work with two other men,

James Weber and another individual. The three men stayed at a friend's house for a couple of hours and then proceeded to a company party at Johnny's 84, arriving at approximately 10 a.m. Defendant stated that he had a beer shortly after he arrived, and that he had five or six more beers during the course of the day. At 3:30 p.m., defendant drove Weber home and then returned to Johnny's 84. He then drank less than two more beers. Defendant left Johnny's 84 at 5:30 p.m. Defendant testified that when he left the bar, he was not intoxicated.

James Weber, a friend and co-employee of defendant, testified that he left work with defendant and another individual at 6 a.m. The three men attended an employee Christmas party at Johnny's 84. They arrived at the party between 10 a.m. and 11 a.m., and remained there until approximately 3:30 p.m. At that time, defendant drove Weber home; Weber's home was located approximately 30 minutes away from the lounge. Weber stated that he had ample opportunity to observe defendant during the day and that defendant did not appear to be under the influence of alcohol.

Augustine A. Valdivia, a supervisor at B.O.C., testified that he saw defendant at the office party and that defendant had a glass on each occasion Valdivia saw him. Valdivia did not know what was in the glass.

Prior to trial, defendant filed a motion to suppress statements and a motion *in limine* to prohibit the introduction of the results of a blood test not performed in accordance with Department of Health guidelines. With respect to the motion *in limine*, defendant contended that he was denied due process of law because the blood samples were not preserved so as to permit him to conduct his own tests. The trial court denied both motions.

The State has filed a motion to strike certain appendices and arguments of defendant on appeal. The State asks us not to consider ineffective assistance of counsel, the trial court's refusal to grant a continuance, and the cumulative effect of all errors, on the ground that some items in the appendices were not admitted into evidence. The record, however, contains enough material to enable us to consider defendant's contentions on appeal. Consequently, we will consider all assignments of error.

Defendant first contends that he was denied effective assistance of counsel at trial. Defendant sets forth four bases in support of this contention: that his attorney failed to engage in any pretrial interviews or investigation until after the trial had started; that his attorney failed to retain an expert to rebut the testimony of the prosecu-

tion's State witness; that his attorney failed to locate and call as a witness a waitress from Johnny's 84; and that his attorney had Lonnie Bodoh, defendant's father, serve subpoenas for records and witnesses on the third day of trial.

■■ ■ The governing standard for determining incompetency of counsel is whether the alleged incompetence produced substantial prejudice to the defendant without which the result likely would have been different. (*People v. Royse* (1983), 99 Ill. 2d 163, 457 N.E.2d 1217.) Collaterally, defendant is entitled to competent, not perfect, representation and, in the absence of a showing that the outcome of a new trial likely would be different, the constitution does not require a new trial for every defendant whose counsel errs at trial. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) A reviewing court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Matters involving the exercise of judgment, trial tactics or strategy will not be reviewed by the appellate court, even where appellate counsel or the reviewing court might have handled the case differently. (*People v. Gallardo* (1983), 112 Ill. App. 3d 764, 445 N.E.2d 1213.) The defendant bears the burden of proving that counsel's performance was deficient and that the deficiency prejudiced the defense. *People v. Powell* (1987), 159 Ill. App. 3d 1005, 512 N.E.2d 1364.

In our view, none of the bases alleged by defendant demonstrates errors so egregious that their correction would result in a different outcome in a new trial. Defendant contends that defense counsel failed to conduct sufficient pretrial interviews or investigation. He alleges that defense counsel's ineffective trial preparation is evidenced by the fact that he had defendant's father serve handwritten subpoenas for witnesses and documents as late as two days after the commencement of the trial. The issuance of a subpoena clearly falls within the purview of trial strategy. Defendant suffered no prejudice by defense counsel's decision to serve a subpoena on the second day of trial when the witness subpoenaed testified as to when defendant left work, a matter which had no effect on the outcome of the trial.

■ Defendant also cites as error defense counsel's failure to call as a witness a waitress from Johnny's 84. Decisions as to whether to call witnesses for the defense are matters of trial strategy and, therefore, are beyond the scope of review. (*People v. Reese* (1984), 121 Ill. App. 3d 977, 460 N.E.2d 446.) In the absence of a showing of substantial prejudice, a reviewing court will not second-guess a trial

counsel's decision regarding the calling or questioning of witnesses. (*People v. Wright* (1986), 111 Ill. 2d 18, 488 N.E.2d 973.) The failure to find a witness, *per se*, cannot constitute ineffective assistance of counsel. *People v. Kubat* (1986), 114 Ill. 2d 424, 501 N.E.2d 111.

In our judgment, defendant has failed to demonstrate that he was substantially prejudiced by defense counsel's failure to call this witness. Defense counsel interviewed and called as a witness James Weber, who was with defendant from 6 a.m. to 4 p.m. on the date of the accident. Weber testified that he observed defendant drink one beer. Nevertheless, defendant himself testified that he had six to eight beers over the course of the day. Additional witnesses, such as the bartender or patrons of the bar, would only have provided repetitive testimony as to defendant's alcohol consumption. Moreover, defendant's alcohol consumption had been scientifically determined by the blood tests administered at the hospital. Additional testimony from the bar patrons could not have refuted this scientific evidence. The lack of such testimony did not prejudice defendant to the extent that the outcome of the trial would have been different. See *People v. McVay* (1988), 170 Ill. App. 3d 443, 524 N.E.2d 635.

Additionally, we find that defense counsel's failure to present exculpatory expert evidence did not prejudice defendant so as to entitle him to prevail on his ineffective assistance of counsel allegation. It is true that the failure to call an expert may be grounds for the granting of an ineffective assistance of counsel claim (*People v. Greer*, 79 Ill. 2d 103, 402 N.E.2d 203); nevertheless, we believe that here, defense counsel's decision not to call an expert is a trial strategy which falls within the wide range of reasonable professional assistance. (See *People v. Hicks* (1987), 162 Ill. App. 3d 707, 516 N.E.2d 807.) Contrary to defendant's contention, we do not believe that Long's testimony was the sole basis from which the jury inferred that defendant was under the influence of alcohol at 5:33 p.m. The jury had scientific data, as well as witness testimony, from which it reasonably could make this inference. A defense expert would not have been able to refute this data or testimony, but could only refute Long's extrapolations. We believe that cross-examination of Long adequately served this purpose. Significantly, defendant has failed to indicate whether contrary expert testimony would have been available. Defendant was not prejudiced by defense counsel's failure to call an exculpatory expert.

Accordingly, we find that defendant was not denied a fair trial by ineffective assistance of counsel. In conjunction with this finding, we also find that defendant was not prejudiced by the trial court's refusal

to grant him a continuance to obtain new counsel. Defendant moved for a continuance after jury selection had commenced and four jurors were about to be sworn in. Defendant stated to the judge that he did not agree with his attorney's tactics or his way of going about the situation. Defendant claimed that he did not believe his attorney had his best interests in mind. At this time, defendant's counsel moved for a mistrial. The trial court denied the motion.

■■ The right to counsel includes the right to be represented by counsel of one's own choice; however, that right is not absolute. (*People v. Lewis* (1988), 165 Ill. App. 3d 97, 518 N.E.2d 741.) The right to choose one's counsel must be balanced against the equally desirable public need for efficient and effective administration of criminal justice. (*People v. Myles* (1981), 86 Ill. 2d 260, 427 N.E.2d 59; *People v. Winfield* (1987), 160 Ill. App. 3d 983, 513 N.E.2d 1032.) The decision to grant a continuance for substitution of counsel is within the sound discretion of the trial judge. (Ill. Rev. Stat. 1985, ch. 38, par. 114—4(e); *People v. Sanchez* (1986), 115 Ill. 2d 238, 503 N.E.2d 277; *People v. Hanson* (1983), 120 Ill. App. 3d 84, 457 N.E.2d 1048.) In making this determination, the trial judge may review the history of the case and also may consider the diligence shown by the moving party. *People v. Harris* (1988), 123 Ill. 2d 113, 526 N.E.2d 335.

■■ The trial court here determined that in light of the history of defendant's case, he was not entitled to a continuance for substitution of counsel nor was he entitled to a mistrial. The court stated that it believed defendant's request for new counsel was a defense tactic designed to avoid trial. The court also noted that it believed defendant requested the continuance due to his dissatisfaction with the jury venire that had been called up. We find that the trial court's determinations were proper. During the two-year pendency of the case, defendant at no time indicated a lack of satisfaction with his attorney. Moreover, as recent as the day prior to this request for new counsel, a motion had been heard on behalf of defendant, and defendant did not object to the qualifications or participation of his attorney at that time. Our review of the record reveals no basis for defendant's contention that the trial court erred in denying his request for substitution of counsel and for a mistrial.

We next will address defendant's contention that the trial court erred in denying his motion *in limine* and post-trial motions requesting that the jury not be permitted to consider the results of a blood test not taken pursuant to the Department of Public Health regulations. In connection with this contention, defendant also asserts that the trial court improperly failed to instruct the jury as to the limited

use of the improperly administered blood test. Defendant maintains that these errors require that his convictions be reversed and remanded for a new trial. The State argues that because defendant did not object to the validity of the test procedures at trial or in a post-trial motion, but rather, objected only to the failure to preserve the samples, he has waived this issue for purposes of our review. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) We believe that defendant's objections at the instructions conference adequately preserved the issue for review, and accordingly, we will address defendant's contentions.

■ Defendant was charged with two separate offenses, driving while under the influence and reckless homicide. A conviction under the DUI provision of the Illinois Vehicle Code requires that chemical analysis of the person's blood be performed according to the standards promulgated by the Department of Public Health. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2.) This statutory requirement, however, does not apply to the reckless homicide charge. The ordinary standards of admissibility apply to such prosecutions. (*People v. Murphy* (1985), 108 Ill. 2d 228, 483 N.E.2d 1288; *People v. Hartwick* (1984), 128 Ill. App. 3d 272, 470 N.E.2d 606.) Accordingly, we will consider defendant's first contention as it applies to each charge individually.

■ ■ A person is presumed to be under the influence of alcohol when the alcohol concentration in his blood is 0.10 or more. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(b)(3).) No person who is under the influence of intoxicating liquor may drive any vehicle within this State. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.) Any person who drives under the influence of intoxicating liquor automatically consents to a chemical test of his blood to determine its alcohol content if he is arrested for any offense as defined under section 11—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501) (driving while under the influence of alcohol, other drug or combination thereof). (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(a).) A chemical test performed according to the standards promulgated by the Department of Public Health shall be considered valid for purposes of an action arising out of an arrest for an offense as defined in section 11—501. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a)(1).) Compliance with the standards is a prerequisite to admissibility on a DUI charge. *People v. Emrich* (1986), 113 Ill. 2d 343, 493 N.E.2d 1140.

It is true that blood tests not performed pursuant to the Department of Public Health regulations are inadmissible for the purpose of establishing alcohol concentration. (*People v. Emrich*, 113 Ill. 2d 343, 493 N.E.2d 1140.) Thus, to the extent the trial court permitted the

jury to consider the results of the 7:55 p.m. test as evidence of defendant's alcohol concentration at that time, it erred. Nevertheless, we find that in view of the overwhelming evidence supporting defendant's DUI conviction, the error was harmless beyond a reasonable doubt.

A determination of whether a person is under the influence of alcohol does not rest solely on the results of chemical analysis. See *People v. Seefeldt* (1983), 112 Ill. App. 3d 106, 445 N.E.2d 427 (stating that the term "under the influence of intoxicating liquor," even without consideration of chemical analyses, is not unconstitutionally vague because that term has long been held to mean a condition, caused by the consumption of intoxicants, that makes a person less able, either mentally or physically, or both, to exercise clear judgment, and with steady hands and nerves operate an automobile with safety to himself and to the public).

The jury here was instructed that "[a] person is under the influence of alcohol when as a result of drinking *any* amount of alcohol his mental and/or physical faculties are so impaired as to reduce his ability to think and act with ordinary care." (Emphasis added.) We believe that the jury was presented with sufficient evidence to permit it to conclude that defendant was under the influence at the time of the accident. Defendant himself testified that he began drinking at approximately 10:30 a.m. and that he had approximately six beers during the day. Defendant additionally testified that he had one to two beers during the hour before he left the bar. DeVries and Chico testified that defendant told them he had consumed eight beers prior to leaving the bar. Defendant's supervisor, Valdivia, testified that he saw defendant with a glass in his hand throughout the day. Defendant's friend, Weber, testified that when he and defendant arrived at the bar, he observed defendant drinking beer. A witness to the accident observed defendant driving erratically in the seconds preceding the accident. The State troopers, DeVries and Chico, each testified that defendant's breath smelled of alcohol. Moreover, the hospital phlebotomist also smelled alcohol on defendant's breath.

■ Additionally, the jury was presented with expert testimony regarding defendant's *total body burden of alcohol* based upon the results of the two blood tests. Long testified as to his extrapolations as well as to the methodology employed to arrive at these extrapolations. Long emphasized that his extrapolations did not relate to alcohol concentration, but only to total body burden of alcohol. We believe that in view of this testimony, and the factors detailed above, the evidence is not so improbable as to raise a reasonable doubt of guilt.

(See *People v. Davis* (1983), 95 Ill. 2d 1, 447 N.E.2d 353 (a reviewing court will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt). See also *People v. Bentley* (1989), 179 Ill. App. 3d 347, 534 N.E.2d 654 (evidence that defendant admitted drinking some alcohol, smelled of alcohol, was unable to walk without support, and had slurred speech sufficient to sustain a DUI conviction).) Accordingly, we conclude that any error engendered by the admission of the results of the 7:55 p.m. blood test was harmless in view of the overwhelming evidence in support of defendant's DUI conviction.

We next address defendant's contention that the trial court improperly admitted the results of the 7:55 p.m. blood test for purposes of the reckless homicide charge. As noted earlier, the statutory requirements applicable to blood tests for purposes of a DUI charge are not applicable to a reckless homicide charge. Accordingly, the ordinary standards of admissibility apply. *People v. Murphy*, 108 Ill. 2d 228, 483 N.E.2d 1288.

We believe the 7:55 p.m. blood test was properly admitted for purposes of the reckless homicide charge. Initially we note that, in our judgment, the State provided ample foundation, through Kutka's and Navarro's testimony, for the admission into evidence of this test. Defendant argues, however, that *People v. Emrich* requires that the trial judge make a specific factual finding regarding the accuracy of a blood test before he can determine whether the results of that test are admissible. Defendant points out that no such factual finding was made here. We disagree with defendant's interpretation of the *Emrich* decision.

In *Emrich*, the supreme court considered the propriety of the trial court's decision to suppress the results of a blood test which was taken without the use of anticoagulant or preservative and which was performed more than seven hours after the blood was drawn. The court determined that it had no basis to determine admissibility where there had been no finding by the trial judge as to the accuracy of the test. (*People v. Emrich*, 113 Ill. 2d 343, 493 N.E.2d 1140.) The *Emrich* court, however, considered a situation in which there was a conflict in the testimony as to the validity of the test results. Here, there is no such conflict. The jury heard extensive testimony from Debra Kutka and Mike Navarro regarding the procedures used to draw defendant's blood. Moreover, Navarro specifically testified as to the accuracy of his testing procedures. Defendant at no time contradicted this testimony. In light of this extensive testimony, it is our view that the jury had sufficient information to conclude whether it

believed the 7:55 p.m. test results were credible. There was no need here, as there was in *Emrich*, for the trial court to make a factual finding as to the test's validity. Accordingly, we find that the trial court did not err in admitting that test for purposes of the reckless homicide charge.

■■■ ■ We additionally find that the jury had sufficient evidence to find defendant guilty beyond a reasonable doubt of reckless homicide. A person commits reckless homicide if, while driving a motor vehicle, he unintentionally kills an individual and the acts which cause death are performed recklessly so as to create a likelihood of death or great bodily harm to some person. (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).) A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that his acts are such as are likely to cause death or great bodily harm to some individual and where such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in such a situation. (*People v. Evans* (1984), 124 Ill. App. 3d 634, 464 N.E.2d 1083.) Being under the influence of alcohol at the time of the alleged violation shall be *prima facie* evidence of a reckless act. (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(b).) This *prima facie* evidence may be rebutted by showing that although the accused was under the influence of alcohol when he performed the acts causing the death of another, the acts were not in fact performed recklessly. (*People v. Jackson* (1987), 118 Ill. 2d 179, 514 N.E.2d 983.) The mental state of recklessness is to be inferred from all the facts and circumstances in the record, and whether the given conduct is reckless is a fact question for the trier of fact to decide. *People v. Gittings* (1985), 136 Ill. App. 3d 655, 483 N.E.2d 553.

■■ As noted previously, we believe that the jury had sufficient evidence to conclude that defendant was under the influence of alcohol at the time of the incident. Accordingly, we find that the State set forth *prima facie* evidence that defendant acted recklessly at the time of the incident. In our view, defendant failed to adequately rebut this *prima facie* evidence. That is, we believe the jury had sufficient evidence to reasonably conclude that defendant acted recklessly and consciously disregarded a substantial risk that his acts could cause death or great bodily harm.

Defendant admitted that throughout the day, but before he drove that evening, he consumed six to eight beers. Michael Kopischke testified that he observed defendant change lanes three times within a two-minute period. Defendant switched from the curb lane to the left lane, then back to the curb lane, then accelerated and switched back to the left lane and lost control of the vehicle. Defendant's vehicle

swerved into incoming traffic and collided with the Haberkorn vehicle. Although defendant testified that he was forced into oncoming traffic by a collision in the northbound lane, Kopischke testified that he observed no such collision. It is the jury's prerogative to resolve the conflicting evidence, and a reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses; a reviewing court will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Davis*, 95 Ill. 2d 1, 447 N.E.2d 353.) Here, the evidence is not so improbable as to raise a reasonable doubt of defendant's guilt. The jury properly found defendant guilty of reckless homicide.

Defendant next contends that the trial court erred when it did not instruct the jury as to the limited use of the 7:55 p.m. blood test. As noted previously, the improperly administered blood test was invalid for purposes of establishing defendant's blood-alcohol concentration with respect to the DUI charge, but was valid for purposes of establishing defendant's blood-alcohol concentration with respect to the reckless homicide charge. The relevant instructions which were given are as follows:

> "If, you find that, while driving a motor vehicle, the amount of alcohol in the defendant's blood as shown by a chemical analysis of his blood was 0.10 percent or more by weight of alcohol, there is a presumption that the defendant was under the influence of alcohol.
>
> &#42; &#42; &#42;
>
> However, this presumption is not binding on you and you may take into consideration any other evidence in determining whether or not the defendant was under the influence of alcohol.
>
> &#42; &#42; &#42;
>
> If you find that the amount of alcohol in the defendant's blood as shown by a chemical analysis of his blood was in excess of 0.05 but less than 0.10 percent by weight of alcohol, this shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor."

At the instructions conference, defense counsel objected to these instructions because they did not indicate the difference in applying the instructions to the two offenses, reckless homicide and driving under the influence. Nevertheless, defense counsel did not tender an alternative instruction to the court.

■ Generally, the party desiring a specific instruction must offer

it and request the court to give it; the court has no obligation to instruct on its own motion. (*People v. Jovicevic* (1978), 63 Ill. App. 3d 106, 379 N.E.2d 665.) This rule is modified only by the requirements of fair trial. (*People v. Grant* (1981), 101 Ill. App. 3d 43, 427 N.E.2d 810.) The trial court bears only the responsibility of seeing that the jury is instructed on the elements of the crime charged, on the presumption of innocence, and on the burden of proof. (*People v. Williams* (1981), 97 Ill. App. 3d 394, 422 N.E.2d 1091.) A defendant who desires the advantage of limiting instructions has the burden of submitting them. (*People v. Gratton* (1963), 28 Ill. 2d 450, 192 N.E.2d 903.) On review, a defendant cannot complain that an instruction was not given when he never tendered that instruction at trial. *People v. Williams*, 97 Ill. App. 3d 394, 422 N.E.2d 1091.

█ Defendant objected to the instruction which the court gave to the jury, but did not tender an alternative instruction. The trial court properly instructed the jury on the elements of the crimes charged, the presumption of innocence and the burden of proof. Defendant bore the responsibility of presenting limiting instructions at the time of trial, but failed to do so. Defendant may not now allege error in the instructions.

Defendant next contends that the trial court erred in admitting into evidence a diagram prepared by Officer DeVries depicting the scene of the accident. Defendant asserts that the diagram was based on hearsay testimony and that, accordingly, he was denied his sixth amendment right to confrontation.

The diagram depicted the direction of the vehicles and their final resting places. DeVries testified that during his investigation he personally took measurements regarding the resting positions of the vehicles and that he personally observed the positioning of the various debris. DeVries also testified, however, that he spoke with Haberkorn, who told him that she believed she was travelling southbound in the outside lane prior to the accident. Her statement was the reason that DeVries placed her car in that location in the diagram. DeVries further testified that the positioning of defendant's vehicle came from Kopischke, but that he did not personally talk to Kopischke. It was Sergeant Michael Edie who spoke with Kopischke and reported the conversation to DeVries.

█ █ We agree that the diagram, based partially on what Haberkorn and Kopischke told police officers, contained hearsay and that the trial court erred in admitting the diagram into evidence. We find, however, that its introduction constituted harmless error. Admission of hearsay evidence is harmless error if there is no reasonable possi-

bility that the verdict would have been different had the hearsay been excluded. (*People v. Carr* (1988), 168 Ill. App. 3d 669, 523 N.E.2d 393; *People v. Jones* (1983), 114 Ill. App. 3d 576, 449 N.E.2d 547.) In the present case, both Haberkorn and Kopischke testified for the State and were subject to cross-examination. Haberkorn stated that she did not remember how the accident occurred. Kopischke's testimony was consistent with what he reported to the police. It is undisputed that the vehicles of Haberkorn and defendant wound up in the lane of oncoming traffic, and it is of no significance as to whether Haberkorn's vehicle was in the inside or outside lane. The introduction of the diagram into evidence was harmless error.

■■ Defendant finally contends that even if each alleged error was not prejudicial, the cumulative effect of the alleged errors denied defendant a fair trial. In view of our findings, it is our judgment that defendant was prejudiced neither by the alleged errors individually nor by the cumulative effect, if any, which they engendered. The evidence at trial overwhelmingly supports defendant's convictions, and we find that he received a fair trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LaPORTA, P.J., and EGAN, J., concur.